[No. D016849. Fourth Dist., Div. One. May 5, 1994.]

ELIZABETH TRIPLETT, Plaintiff and Respondent, v.
FARMERS INSURANCE EXCHANGE, Defendant and Appellant.

1416

**COUNSEL**

Chapin, Fleming & Winet, George E. Fleming and Shirley A. Banner for Defendant and Appellant.

Charles S. LiMandri, Swift & Connolly and Hugh K. Swift for Plaintiff and Respondent.

**OPINION**

**FROEHLICH, J.**—In a personal injury action, plaintiff and respondent Elizabeth Triplett (Triplett) recovered a jury verdict against defendant Thomas Simko (Simko). After the verdict was entered, the court ordered that

Simko's insurer, appellant Farmers Insurance Exchange (Farmers) be added as an additional defendant, and then sanctioned Farmers over $15,000 for refusing to settle before trial. Farmers appeals, raising a number of challenges to the sanctions order.

We conclude that, however salutary the benefits of encouraging pretrial settlements, the court is not empowered to sanction a defendant under Code of Civil Procedure[1] section 128.5 for defending an action rather than settling, much less to add an insurer after judgment as a party in order to impose such a sanction.

## I. *The Genesis of the Action*

### A. *Pretrial Proceedings*

In September 1990, Triplett sued Simko for injuries she sustained when his truck rear-ended her car.

During the pretrial discovery the defense's medical expert, Dr. William Curran (Curran), examined Triplett. At his deposition in October 1991, Curran opined that the duration of the therapy appeared excessive, and hence so did the charges incurred therefor, further opining that Triplett should have been able to return to work earlier than she actually did.

The matter was arbitrated on May 10, 1991. At that time Triplett testified her injuries prevented her from participating in the activities she had enjoyed before the accident, one of which was tennis. However, the defense impeached her with entries on her medical chart which indicated she had resumed full activities, including tennis, less than two months after the accident. Triplett stated she could not explain the entries because she did not play tennis. When cross-examined against her deposition testimony, which indicated she did play tennis, she could not explain why she had listed tennis as one of her activities.

The arbitrator awarded Triplett $17,500, and Simko filed a request for trial de novo. Shortly thereafter, Triplett filed a section 998 offer for $17,500.

A de novo settlement conference was held in October 1991. At that time Simko's counsel appeared along with a Farmers representative, whose settlement authority was limited to $7,500. Judge Pate, the settlement judge, told defense counsel the matter had a value somewhere between $10,000 and $12,000, but defense counsel declined to offer more than $7,500, believing

---

[1] All statutory references are to the Code of Civil Procedure unless otherwise specified.

they had significant impeachment evidence against Triplett regarding her sports activities. Pate also told Triplett she should accept $12,000, and she was prepared to accept that amount. However, defense counsel were never told Triplett was prepared to accept anything less than $17,500.

## B. *Trial Events*

At trial, changes in anticipated testimony forced defense counsel to argue to the jury that the proper award should be between $10,000 and $12,000. First, Triplett undermined Simko's ability to impeach her by completely reversing her testimony about her sports activities.[2] Second, the defense expert, whose earlier report had doubted that medical care in the April through June 1990 period was appropriate, softened his opinion on cross-examination and refused to criticize the need for medical care, thus forcing the defense to concede additional "special" damages.

The refusal to settle for more than $7,500 prior to trial, coupled with other factors, apparently led the judge to conclude the insurer had acted in bad faith.[3] Recognizing that *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58] barred a bad faith claim by Triplett, the trial judge announced she would examine alternative ways to sanction the insurer for defending rather than settling the action.

Against this backdrop, we now examine the court's effort to sanction Farmers.

## II. *The Court Lacked Jurisdiction Over Farmers*

The first obstacle the court faced and tried to overcome was how to impose sanctions on a nonparty. After the jury returned its award, the court immediately set an order to show cause re sanctions for the purpose of determining whether defending the action was sanctionable conduct by

---

[2]Specifically, Triplett testified at arbitration that she did not play tennis, did not know why she had listed tennis as an activity, and could not understand why her medical records showed she returned to playing tennis or full activities shortly after the accident. At trial, however, she testified she *did* play tennis and had returned to full activities per the express instructions of her health providers. Her treating physicians said that the chart entry reflecting she was back on full activity, playing tennis, etc., did not really mean what it said, but instead meant she was *attempting* to return to full activity. Thus, an area of impeachment was removed based on Triplett's unexpected reversal of her earlier testimony and the "explanation" by her physicians.

[3]The judge concluded (1) Farmers had a policy to refuse to settle in order to "send a message" to the plaintiffs' bar; and (2) Farmers knew the case was worth more than $7,500 but wished to coerce a lower settlement.

Farmers.[4] At the first hearing the court concluded sanctions under section 128.5 were proper, effectively rejecting the argument that the defense had a basis for believing Triplett's settlement demand was too high. However, recognizing such sanctions were proper only against a party, the court then set a second hearing to determine whether to "add" Farmers as an additional defendant, under the aegis of section 187.

At this second hearing the court ordered that Farmers be added as a defendant. The court concluded it had the power to add Farmers under section 187 because Farmers controlled the litigation, financed it and hired the attorneys, and therefore due process would not be offended if Farmers were added postjudgment.

We conclude the trial court could not add Farmers as a defendant under section 187. That section provides: "When jurisdiction is, by the constitution or this code, or by any other statute, conferred on a court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

Although section 187 has been interpreted to allow flexibility in proceedings, it has never been construed to allow imposition of liability on an entity which was never a party to the action. Cases which have used section 187 to add new parties as additional judgment debtors have always been rooted in the "alter ego" concept that the original party and the new party were one and the same. Adding the alter ego entity after judgment, therefore, amounted to little more than correcting a misnomer in naming the defendant. (See, e.g., *Mirabito* v. *San Francisco Dairy Co.* (1935) 8 Cal.App.2d 54, 60 [47 P.2d 530].) Triplett has not cited, nor has our research uncovered, any case extending section 187 to permit addition of a defendant by postjudgment motion *except* where the added defendant was found to be the alter ego of the original defendant.

---

[4]On appeal, Farmers asserts the court never properly obtained personal jurisdiction because no written notice of the first order to show cause hearing was ever served on Farmers. Instead, the only notice was oral notice to Simko's attorney, which notice Farmers claims was insufficient to obtain jurisdiction over Farmers. However, Farmers *actually* appeared and litigated the motion on the merits, without objecting to the technicalities of notice. Under such circumstances we must deem the appearance to have been a general one, notwithstanding Farmers' assertion it was "specially" appearing only. When a party appears and argues the merits of the pending matter, other than the merits of whether assumption of jurisdiction over the party is proper, the appearance is a general rather than special appearance, regardless of how the party wishes it to be characterized. (*California Overseas Bank* v. *French American Banking Corp.* (1984) 154 Cal.App.3d 179, 184-185 [201 Cal.Rptr. 400].)

The trial court, citing *NEC Electronics Inc.* v. *Hurt* (1989) 208 Cal.App.3d 772 [256 Cal.Rptr. 441], construed section 187 to allow the addition of any party which "controlled" the litigation, *whether or not it was the alter ego of the named defendant.* The trial court reasoned that "control" of the litigation was enough to obviate any due process concerns. This fundamentally misconstrues *NEC* and section 187. The ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns. The due process considerations are in addition to, *not in lieu of,* the threshold alter ego issues. In *NEC,* for example, the court discussed the "control" issues only after *first* deciding that the alter ego component was met. (208 Cal.App.3d at pp. 777-779.) The *NEC* court concluded that addition of the new party was improper because, even though he was the alter ego, he had not been afforded the due process right to litigate the underlying action. Similarly, in *Dow Jones Co.* v. *Avenel* (1984) 151 Cal.App.3d 144 [198 Cal.Rptr. 457] the court indicated that the due process concern raised when new parties are named after judgment is to determine not only alter ego status but also whether there was sufficient control over the underlying litigation to permit the opportunity to contest the underlying judgment. (*Id.* at pp. 148-151; see also *Motores De Mexicali* v. *Superior Court* (1958) 51 Cal.2d 172, 175-176 [331 P.2d 1] [before new party may be added, due process requires chance to litigate both alter ego issue *and* whether the new party controlled underlying litigation].)

Here, it is undisputed that Farmers is not the alter ego of Simko. It cannot be added as a defendant by postjudgment motion merely because it had some practical control over the defense of Simko.

III. *A Trial Court Cannot Use Section 128.5 to Award the Same "Bad Faith" Damages Prohibited by Moradi-Shalal*

We next turn to the question of whether the trial court could properly sanction Farmers for failing to settle the case.[5] Here, the trial court awarded all fees and costs incurred by Triplett following the unsuccessful settlement

---

[5]Farmers claims the court had no power to sanction it under section 128.5 because that section only permits sanctions against parties or their attorneys, and Farmers qualified as neither. Although this is correct (*County of Imperial* v. *Farmer* (1988) 205 Cal.App.3d 479, 485 [252 Cal.Rptr. 382]), the argument merely recasts the contention that Farmers was improperly joined as a party. We concluded in part II, *ante,* that joinder under section 187 was improper; however, our analysis in part III, *post,* proceeds on the assumption Farmers could properly have been joined and focuses on whether section 128.5 would permit sanctions for bad faith refusal to settle.

conference. The trial court concluded that Farmers' settlement offer of $7,500 was less than the medical expenses and lost income alone, that such expenses and lost income were never in doubt, and that therefore the failure to settle was in bad faith and for the sole purpose of harassing Triplett. Accordingly, the court awarded sanctions under section 128.5.

We conclude that a trial court may not sanction (under § 128.5) a defendant's decision to insist on its constitutional right to a jury trial rather than settle a case, even if the trial court concludes the failure to settle was motivated by ulterior, and allegedly improper, purposes.

## A. The "Malicious Defense" Issue

Our first concern is that the award appears to transgress the long-standing law that there is no claim for malicious defense. Regardless of whether defendant has a meritorious defense to a lawsuit, the decision to defend rather than settle an action has long been recognized as a matter vested solely in the defendant's discretion. For that reason, a plaintiff has no claim for "malicious defense" when a defendant chooses trial rather than settlement, even if the defendant had no hope of prevailing. In the seminal case on this issue, *Eastin* v. *Bank of Stockton* (1884) 66 Cal. 123 [4 P. 1106], the appellant argued that if there existed a claim for malicious prosecution, the court must similarly recognize a claim for malicious defense. The court rejected that argument, explaining: " '[This] argument fails to distinguish between the position of the parties, plaintiff and defendant, in an action at law. The plaintiff sets the law in motion; if he does so groundlessly and maliciously, he is the cause of the defendant's damage. But the defendant stands only on his legal rights—the plaintiff having taken his case to court, *the defendant has the privilege of calling upon him to prove it to the satisfaction of the judge or jury, and he is guilty of no wrong in exercising this privilege.*' " (*Id.* at p. 127, italics added.)

The *Eastin* case, which essentially holds a party cannot be held liable for merely standing on his right to a trial, has been reaffirmed in recent years. (See *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 52 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878].) In that the trial court's order effectively awards Triplett damages for "malicious defense" of the action, it cannot stand.

Triplett cites *Southern Christian Leadership Conference* v. *Al Malaikah Auditorium Co.* (1991) 230 Cal.App.3d 207 [281 Cal.Rptr. 216] as providing support for the court's ruling. The *Eastin* analysis convinces us that this holding is flawed. The *Southern Christian* court was the first, and so far as

we are aware, the only court which held sanctions for a "frivolous" defense were awardable under section 128.5. However, that court relied exclusively on language from two cases: *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863 [254 Cal.Rptr. 336, 765 P.2d 498] and *National Secretarial Service, Inc. v. Froehlich* (1989) 210 Cal.App.3d 510 [258 Cal.Rptr. 506]. Neither of these cases is applicable. In *Sheldon Appel*, the court mentioned that other remedies (such as section 128.5 sanctions for frivolous or dilatory conduct) might be a preferable alternative to a malicious prosecution lawsuit. (*Sheldon Appel, supra,* at pp. 873-874.) However, unlike *Sheldon Appel*, in which sanctions were suggested as an expeditious *substitute* for the available remedy of malicious prosecution, the courts have refused to permit claims for malicious defense, and hence there is no equivalent available remedy for which sanctions can be substituted. Thus, *Southern Christian* relied on a "malicious prosecution" case to create a remedy for "malicious defense," which is precisely contrary to *Eastin*.

The reliance by *Southern Christian* on *National Secretarial Service, Inc. v. Froehlich, supra,* 210 Cal.App.3d 510, even more widely misses the mark. The sanctions there, although awarded against a defendant, were not based on a defendant's insistence on going to trial, but rather on his prosecution of a frivolous appeal. An award of sanctions under such circumstances does not require a court to attempt to stretch a generic statute such as section 128.5 (see fn. 6, *post*) to fit the conduct; instead, there is specific statutory authority for that award (see § 907). Thus, *Southern Christian* concluded a generic sanctions statute inferentially covered conduct not identified in that statute, relying on a case in which sanctions were upheld under a different statute specifically identifying the sanctionable conduct. For these reasons, reliance on *National Secretarial Service* was misplaced.

We are therefore convinced that *Southern Christian* is incorrect, and that our earlier observation in *West Coast Development v. Reed* (1992) 2 Cal.App.4th 693, 703 [3 Cal.Rptr.2d 790] remains correct: "Failing to accept a settlement offer, even if such conduct is completely unreasonable, is . . . no ground for imposition of sanctions."

B.  *The Moradi-Shalal Issue*

Triplett's suggestions on appeal, and the trial court's comments below, indicate a view that sanctions for refusing to settle are appropriate because Farmers owed special obligations as an insurer. However, it is clear Farmers owed Triplett no common law duty to settle (*Murphy v. Allstate Ins. Co.* (1976) 17 Cal.3d 937, 940-942 [132 Cal.Rptr. 424, 553 P.2d 584] [duty to settle is owed to insured and not to third party]), and our Supreme Court

in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287 quashed any notion that third parties had a statutory basis for damages from unfair claims settlement practices. (*Id.* at pp. 304-305.) The trial court explicitly recognized that *Moradi-Shalal* eliminated third party claims for unfair settlement practices; nevertheless it embarked on an effort to sanction Farmers for precisely the kind of conduct found not actionable in *Moradi-Shalal.*[6] We do not believe the holding of *Moradi-Shalal* can be obviated merely by taking the same damages as were there barred and relabeling them as sanctions under section 128.5. Instead, we reiterate that *Moradi-Shalal* cautions that (1) unfair settlement practices are the province of the Insurance Commissioner; (2) third parties aggrieved by such practices have limited remedies, such as the recovery of prejudgment interest; and (3) the Legislature could have, but as yet had not, created further remedies.[7]

## C.   *California Rules of Court Rule 227 Adds Nothing*

■   Triplett, citing the familiar rule that a decision correct in law will not be reversed merely because the stated reasons were incorrect (*D'Amico* v. *Board of Medical Examiners* (1974) 11 Cal.3d 1, 19 [112 Cal.Rptr. 786, 520 P.2d 10]), alternatively argues the sanctions were proper under California Rules of Court, rule 227, which permits sanctions for the failure of any person to attend or participate "in good faith" in any court-ordered conference. However, Farmers did attend, participate, and offer $7,500. We eschew any notion that a court may effectively force an unwilling party to settle by raising the specter of a post hoc determination that failure to do so will be evidence of failure to participate in good faith. "[T]he court may not force a litigant to settle[;] it may [only] order him to appear and at least engage in the settlement negotiations." (*City of El Monte* v. *Takei* (1984) 158 Cal.App.3d 244, 248 [204 Cal.Rptr. 559].)

---

[6]As the trial court commented at the outset: "The Supreme Court has told us in *Moradi-Shalal* that there's no third party bad faith. Clearly, this [case] has a sense of bad faith as it was previously known. Whether sanctions are appropriate I don't know . . . but it's something that I will look into . . . ."

[7]We note that the Legislature, by enacting section 1021.1, did provide for precisely the type of remedy as was invoked here (i.e., recovery of attorney fees) under circumstances analogous to those allegedly present here (i.e., unreasonable failure to accept a statutory settlement offer). However, section 1021.1 would not apply to this action because it applies on an experimental basis in only two counties. (§ 1021.1, subd. (h).) Moreover, even were section 1021.1 to have had statewide operation, it still would not apply because the Legislature exempted from its scope any case the gravamen of which is personal injury (§ 1021.1, subd. (f)(5)), perhaps in recognition of the inherent unpredictability of valuing personal injury settlements. Because section 1021.1 is a special statute, covering the particular scenario which confronted the trial court below (i.e., a rejected settlement offer followed by a verdict exceeding the settlement offer), as a matter of statutory construction we hold that the provisions of section 1021.1 would prevail over the more general section 128.5, to the extent both touched upon the same matter. (*People* v. *Wood* (1958) 161 Cal.App.2d 24, 29 [325 P.2d 1014]; *People* v. *Moroney* (1944) 24 Cal.2d 638, 644-645 [150 P.2d 888].)

### D. *Conclusion*

We conclude the power under section 128.5 to sanction bad faith "actions or tactics" cannot be applied where the only action or tactic is a defendant's decision to choose trial, rather than settlement, regardless of what subjectively motivated that choice. There is no suggestion here that Farmers impeded the progress of the litigation, or that it refused to participate in pretrial discovery, or that it failed to appear at any court-ordered conferences, or that it took any tactic or action other than to conduct a vigorous defense of the action and require Triplett to prove her case. "The *Eastin-Ritter* cases protect the right of a defendant, involuntarily haled into court, to conduct a vigorous defense." (*Bertero* v. *National General Corp., supra,* 13 Cal.3d at p. 52.) Farmers may not be sanctioned for exercising that right.

### DISPOSITION

The order is reversed. Farmers is entitled to costs on appeal.

Huffman, Acting P. J., and Nares, J., concurred.