92 Cal.Rptr.2d 916 (2000)
78 Cal.App.4th 653
FOXGATE HOMEOWNERS' ASSOCIATION, INC., Plaintiff and Respondent,
v.
BRAMALEA CALIFORNIA, INC., et al., Defendants and Appellants; Ivan K. Stevenson, Objector and Appellant.
No. B124482.
Court of Appeal, Second District, Division Five.
February 25, 2000.
Rehearing Denied March 21, 2000.
Review Granted May 17, 2000.
*918 Ivan K. Stevenson and Jeffrey L. Boyle, Rolling Hills Estate, for Defendants and Appellants and for Objector and Appellant.
Steiner & Libo, Leonard Steiner and James T. Perez, Beverly Hills, for Plaintiff and Respondent.
*917 GODOY PEREZ, J.
Defendants Bramalea California, Inc. and Bramalea, Ltd., along with their lawyer, Ivan K. Stevenson, appeal from an order imposing sanctions of more than $30,000 against them for failing to bring their expert witnesses as required during court-ordered mediation. For the reasons set forth below, we reverse and remand for further proceedings because the trial court failed to issue a factually specific written order as required by Code of Civil Procedure section 128.5, subdivision (c). We also hold that portions of the mediator's report about the sanctionable conduct, along with evidence of statements made during the mediation relating to that conduct, may be considered when ruling on the sanctions motion.

INTRODUCTION
Evidence Code sections 1115 through 1128 establish a statutory scheme to protect the confidentiality of mediation proceedings by limiting the mediator's ability to issue reports or findings and by making inadmissible evidence of what occurred during mediation. This appeal raises the issues whether those provisions were intended: *919 (1) to prevent a mediator from reporting to the court that counsel or a party had unilaterally and without notice refused to bring their expert witnesses to the mediation, as contemplated by the court's written order to mediate in good faith and as directed by the mediator pursuant to that order; and (2) to preclude a court from considering either the mediator's report or evidence of such conduct when ruling on a Code of Civil Procedure section 128.5 sanctions motion. As discussed below, we hold that the answer to both questions is "no."

FACTS AND PROCEDURAL HISTORY
Plaintiff and respondent Foxgate Homeowners' Association, Inc. (Foxgate), is comprised of the owners of a 65-unit condominium complex in Culver City. The developer of that project was defendant and appellant Bramalea, Ltd., a Canadian corporation. The general contractor was defendant and appellant Bramalea California, Inc., a California corporation.[1] Foxgate sued Bramalea and others for alleged construction defects in the project, spawning cross-actions which eventually encompassed some 25 entities comprised primarily of Bramalea's various subcontractors.
On January 22, 1997, the trial court signed a case management order (CMO) which appointed retired Judge Peter Smith both as a mediator and as a special master for purposes of ruling on any discovery motions. The court gave Judge Smith the power to preside over mediation conferences and "make any orders governing the attendance of parties and their representatives thereat." Under the heading "PRE-MEDIATION MEETING(S)" the CMO provided that Judge Smith "shall set such ... meetings as [he] deems appropriate to discuss the status of the action, the nature and extent of defects and deficiencies claimed by Plaintiffs, and to schedule future meetings, including a premediation meeting of all experts to discuss repair methodology and the mediation, and for all matters as deemed appropriate." Under the heading "MEDIATION" the court ordered that the "exact dates and structure of the mediation process will be determined by the Special Master. All parties will make every best effort to cooperate in the mediation process." The CMO also provided that all privileges applicable to mediation and settlement communications would remain in effect.
By letter dated August 20, 1997, Judge Smith scheduled a five-day round of mediation sessions to begin September 16, 1997, writing that "[c]ounsel should bring experts and claims representatives to the mediation sessions." Judge Smith's proposed schedule for the morning of September 16, 1997, called for Foxgate's presentation of alleged defects and proposed repairs to all insurance representatives, followed by sessions between Foxgate and Bramalea focusing on alleged architectural and plumbing defects.
On the morning of September 16, 1997, Foxgate's lawyer and nine expert witnesses appeared for the mediation session. Bramalea's lawyer, appellant Ivan K. Stevenson, showed up a half hour late without any of his defense experts.[2] Although the morning session was held, the remaining sessions were cancelled due to the absence of Bramalea's experts. Two days later, Judge Smith filed a report with the court recommending that appellants be sanctioned for their conduct in connection with the mediation process. The report recounted certain disputes between Stevenson *920 and Judge Smith which led to an earlier, unsuccessful motion to disqualify Judge Smith.[3] The report said Stevenson previously sought and was granted a continuance of the mediation sessions and "has spent the vast majority of his time trying to derail the mediations scheduled for September 16 through 22, 1997."
Judge Smith's report then recounted Stevenson's conduct at the mediation session: Stevenson showed up a half hour late on September 16. "Even though the purpose of the mediation session was to have Bramalea's expert witnesses interact with plaintiffs experts on construction defect issues, Mr. Stevenson refused to bring his experts to the mediation ... stat[ing] ... that he did not need experts because of his vast knowledge in the field of construction defect litigation." Stevenson said he would not "dump on the [subcontractors]" and contended Bramalea was not liable for any construction defects because it did not directly perform the work. Stevenson also claimed to have express indemnity agreements with the subcontractors, barring any settlement between Foxgate and the subcontractors without Bramalea's consent, the report said.
Toward the end of the morning session, "it became apparent that Mr. Stevenson's real agenda was to delay the mediation process so he can file a Motion for Summary Judgment. Mr. Stevenson asserted that he has a valid Statute of Limitations defense to plaintiffs entire claim. Mr. Stevenson wants to open discovery in order to bolster his position." Stevenson has had adequate time to prepare such a motion since the case was filed in May 1993, Judge Smith stated. "As a result of Mr. Stevenson's obstructive bad faith tactics, the remainder of the mediation sessions were canceled at a substantial cost to all parties...." The report concluded by recommending that Bramalea and Stevenson be ordered to serve written contribution demands on the subcontractors, bring their experts to any future mediation sessions, and reimburse the parties for all expenses incurred due to the cancelled sessions. Judge Smith's report ended with his resignation as special master and mediator.
On October 31, 1997, Foxgate filed a motion under Code of Civil Procedure section 128.5 seeking more than $24,000 in sanctions, contending that Stevenson's conduct showed a bad faith refusal to meaningfully participate in the mediation process, causing Foxgate to incur unnecessary expert witness fees. In addition to Judge Smith's report, the motion included the declaration of Foxgate's lawyer, James T. Perez.[4] The Perez declaration said that when Stevenson was asked whether his experts would attend, he replied, "`I can't answer that.'" Asked why he did not bring his experts, Stevenson said, "`This is your mediation, you can handle it any way you want. I'm here, you can talk to me.'"
When Perez asked Stevenson about the mediation sessions scheduled with the subcontractors, Stevenson said he would not let any of the subcontractors be dismissed regardless of any settlements that might be reached. Stevenson said he did not care about any settlements between Foxgate and the subcontractors because Bramalea had cross-complained against the subcontractors for express indemnity. So long as Bramalea did not release the subcontractors, the indemnity claims would survive a finding of good faith settlement, *921 Stevenson said. Since the subcontractors could not be free of the action without Bramalea's consent, the subcontractors would not settle out, Stevenson reportedly said.
Perez's declaration added that Stevenson's first mention of a planned summary judgment motion came after Foxgate's experts made their presentations at the September 16 mediation session.
In opposing the motion, appellants claimed that they refused to go along with Foxgate's "plan" to force the subcontractors to pay. They also contended that even though their experts did not attend, Stevenson did take part in the sessions and answered any questions asked of him, and that the sessions were not cancelled because of him but were instead cancelled at Foxgate's request following a private conference between Perez and Judge Smith. The opposition also recounted the dispute which led to Bramalea's unsuccessful motion to disqualify Judge Smith, with appellants contending Judge Smith's conduct at the September 16 session and subsequent report to the court demonstrated his continued prejudice against appellants. In effect, appellants argued, Foxgate sought sanctions simply because Bramalea refused to settle, conduct which is not sanctionable.
Appellants' opposition included the declaration of Stevenson. Stevenson set forth the facts underlying his unsuccessful motion to disqualify Judge Smith, arguing again that Judge Smith was prejudiced against him. Stevenson said he appeared on September 16 and answered all questions put to him. After the morning break, he said there was no reason for Perez to speak to Bramalea without the subcontractors there too, since they actually did the work. Perez became agitated because the sessions were supposed to be conducted differently. Stevenson told Perez that he would not agree to "sell out" the subcontractors. Perez became even more agitated, according to Stevenson, when Stevenson rejected Perez's suggestion that Bramalea's and Foxgate's experts should work together to undermine the subcontractors. Later in the day, after a meeting between Perez and Judge Smith, Perez "announced his decision to terminate the mediation process...." Thus, Stevenson contended, the mediation session ended because Judge Smith had no control over the process and let Perez do so. Stevenson added that a new mediator had been selected by the parties.[5]
Appellants also filed a separate objection to Judge Smith's report which paralleled their opposition to the sanctions motion. Relevant to the issues on appeal is the following statement: "If, Bramalea ... chooses not to have its experts present, that is the choice of the client. The experts have reviewed the plaintiffs reports and have been present for testing. [Bramalea's experts] have discussed their findings with [appellants], but they will not discuss their findings with anyone other than with those that counsel for [Bramalea], decides to whom they will speak. [Sic] Further, any attempts to order them to be present and to participate, would be a direct violation of the attorney work product rule, since there has been no designation of experts in this case under [Code of Civil Procedure] Section 2034."
On November 20, 1997, Judge Robert Letteau denied Foxgate's motion without prejudice, expressly permitting it to be refiled at a later time. The court did so in part because Canadian bankruptcy proceedings were pending against Bramalea, Ltd., and in part because more mediation *922 sessions were planned before the new special master. The court said: "Finish that. Then things will have shaken out maybe a little differently than they are right now. Refile this. I'm only denying it without prejudice. Refile it if you wish against counsel and against Bramalea. [¶] I want the mediation process to have been completed before visiting this motion or my successor visiting with this motion."
One session was held with the new mediator on May 4, 1998. Following that conference, the new mediator issued a report and recommendation stating that he "concluded that further formal mediations among [Foxgate] and [Bramalea], and among [Foxgate], [Bramalea] and [the subcontractors] would not be constructive at this time." He recommended that the "mediation sessions scheduled for May 11-12, 1998, be cancelled and that the discovery stay be lifted immediately."
Soon after the May 4, 1998, mediation conference, Foxgate brought its sanctions motion again, based on appellants' conduct at the September 16, 1997, mediation session.[6] The new motion was virtually identical to the first, except this time Foxgate sought more than $30,000 as sanctions. The only other significant difference was the use of a declaration which Judge Smith submitted to the court in opposition to appellants' separate motion seeking the return of his mediation fees. Judge Smith's declaration stated that Stevenson "aborted" the September 1997 mediation sessions by refusing to participate in good faith, attaching and incorporating by reference his earlier report, which "sets forth in great detail the facts giving rise to the termination of the mediation sessions."
Appellants' opposition to the second motion was virtually identical to the first, except that appellants argued that Judge Smith's report, along with evidence of what happened during the September 16, 1997, mediation session, violated the rules which seek to protect the confidentiality of statements made during mediation. (Evid. Code, §§ 1115-1128.) Appellants also argued that the first sanctions motion had been denied to see how future mediation sessions were conducted and, based on Stevenson's declaration, contended that the new mediator did not believe appellants were acting in bad faith.
The second sanctions motion was heard by Judge Daniel Curry on May 26, 1998. Asked by the court why he did not bring defense experts to the September 1997 mediation session, Stevenson offered the following explanations: (1) it was not necessary because Foxgate's experts had already submitted their own complete reports; and (2) because of ongoing confusion as to whether Bramalea was represented by other counsel, and because that confusion had just been cleared up, Stevenson had problems scheduling the experts, who had been retained by the other defense firm. When the court asked Stevenson where these issues were addressed by his opposition papers, Stevenson answered, "I haven't because, your honor, it is not really an issue...." The court went on to grant the motion, stating, "It appears to me that the breakdown in the first arbitration-mediation attempts are directly tied to the non-attendance of the experts of the defendants and the factual basis as alleged by the moving party." The court issued *923 a minute order that day which simply stated the motion was "granted as prayed, in the amount of $30,578.43, payable to counsel and client."
Appellants contend: (1) reversal is required since the trial court failed to enter a written order which sets forth the facts and circumstances warranting the imposition of sanctions; (2) the court erred in relying on Judge Smith's report and evidence of what was said and done at the September mediation session, since those items were not admissible under the Evidence Code sections regulating the confidentiality of mediations; (3) Judge Smith was biased; (4) appellants were wrongly sanctioned for nothing more than refusing to settle the case; (5) appellants' conduct was not sanctionable; and (6) Bramalea, Ltd., could not be sanctioned since it was subject to a Canadian bankruptcy stay.

DISCUSSION

1. While Sanctions Might Be Appropriate, Reversal and Remand Are Required

Code of Civil Procedure section 128.5 authorizes the award of attorney's fees and costs as a sanction to control improper resort to the judicial process. The statute was designed to strike a balance between competing interests: the need to control improper litigation tactics and the desire to avoid chilling vigorous advocacy. Thus, fees are permitted not just as appropriate compensation to the prevailing party, but as a means of controlling burdensome and unnecessary legal tactics. (Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc. (1998) 65 Cal.App.4th 1131, 1136, 76 Cal.Rptr.2d 918.)
In order to obtain sanctions, the moving party must show that the other party engaged in bad faith actions or tactics that are frivolous or intended solely to cause unnecessary delay. (Code Civ. Proa, § 128.5, subd. (a).) The tactics or actions at issue must have been undertaken with bad faith. Notice and an opportunity to be heard must be given. (Code Civ. Proa, § 128.5, subd. (c); Pacific Trends Lamp & Lighting Products, Inc. v. J. White, Inc., supra, 65 Cal.App.4th at p. 1136, 76 Cal.Rptr.2d 918.) We review an order awarding such sanctions for substantial evidence under the abuse of discretion standard. (Sabek, Inc. v. Engelhard Corp. (1998) 65 Cal.App.4th 992, 1001, 76 Cal. Rptr.2d 882.)
Appellants contend they were improperly punished for their mere refusal to settle, citing Triplett v. Farmers Ins. Exchange (1994) 24 Cal.App.4th 1415, 1422, 29 Cal.Rptr.2d 741 (hereafter Triplett). They are wrong.
The defendant insurer in Triplett was sanctioned for refusing to settle an action because the trial court felt the insurer's conduct in standing firm on its settlement offer, which the judge believed was unreasonably low, constituted bad faith. In reversing that order, the appellate court held the insurer could not be punished for insisting on its constitutional right to a jury trial in lieu of settlement even if its motives were improper. (Id. at p. 1422, 29 Cal.Rptr.2d 741.) The court concluded by stating that Code of Civil Procedure section 128.5 "cannot be applied where the only action or tactic is a defendant's decision to choose trial, rather than settlement, regardless of what subjectively motivated that choice. There is no suggestion here that Farmers impeded the progress of the litigation, or that it refused to participate in pretrial discovery, or that it failed to appear at any court-ordered conferences, or that it took any tactic or action other than to conduct a vigorous defense of the action and require [plaintiff] to prove her case...." (Id. at p. 1425, 29 Cal.Rptr.2d 741.)
*924 Foxgate's sanctions motion and supporting evidence depict a far different scenario. The trial court ordered the parties to mediate their dispute and "make every best effort to cooperate in the mediation process." Judge Smith was granted broad powers as the mediator, including the power to order pre-mediation meetings with the parties' experts, and for all matters he deemed appropriate. He was also authorized to structure the mediation process as he saw fit. Appellants do not contend and the record does not show that they ever objected to these provisions.
In accord with his powers, Judge Smith scheduled a five-day round of mediation sessions, instructing the parties that they should bring their experts so they could discuss the construction defects at issue in the litigation.[7] Again, no objection by appellants to this directive appears in the record. Foxgate complied, incurring substantial expert fees in the process. Stevenson showed up a half hour late without his experts, contending his expertise was sufficient. Perez's declaration depicts Stevenson as at first evasive when asked whether his expert witnesses would attend, stating he could not answer, then telling Perez it was Perez's mediation, that Perez could handle it any way he wanted, but Perez should talk to him. According to the mediator's report, Stevenson had tried to "derail" the mediation process, hoping instead to reopen discovery in order to bring a summary judgment motion. Appellants' written objection to Judge Smith's report stated in essence that it was for Bramalea to choose whether its experts would attend and those experts would not discuss their findings with anyone other than those persons approved by Stevenson. Even though Bramalea never objected to the CMO, which granted Judge Smith authority to schedule meetings with the parties' experts, or to Judge Smith's directive to bring their experts as part of the mediation, their objection to Judge Smith's report argued that such a meeting violated Stevenson's work product privileges.[8] At the hearing on the renewed sanctions motion, Stevenson offered two inconsistent and inadequate explanations not raised in his opposition briefhe did not need to bring his experts because Foxgate's experts had completed their own reports and the delays caused by confusion as to which law firm would represent Bramalea.
This evidence and its attendant inferences, if accepted by the trial court, would support a finding that appellants did far more than simply decline to settle.[9] It shows that they knew from the time the CMO was issued that they might be required to produce their experts as part of the mediation process. Later, they and Foxgate were directed by the mediator to do just that. Instead of timely objecting at either juncture, appellants unilaterally decided not to bring their experts. They did this without notice to the parties or the mediator. This tactic, in contradiction of the CMO and the mediator's directive, *925 caused the scheduled mediation sessions to collapse. As a result, Foxgate, which had readied and produced nine experts for the sessions, incurred substantial expert witness fees. Appellants thus undermined the mediation process before it ever began. The apparent motive for this tactic was appellants' preference to reopen discovery in order to bring a summary judgment motion. Unlike Triplett, the motion was not based on appellants' mere failure to settle.
Even though this evidence would justify a sanctions award based on the allegations of Foxgate's motion, the court must also enter a written order which "recite[s] in detail the conduct or circumstances justifying the order." (Code Civ. Proa, § 128.5, subd. (c).) The court's May 26, 1998, minute order did not comply with this requirement, simply stating without more that the motion had been granted. Its oral statements at the hearing are insufficient. (580 Folsom Associates v. Prometheus Development Co. (1990) 223 Cal. App.3d 1, 22-23, 272 Cal.Rptr. 227.) Nor did the minute order attempt to incorporate Foxgate's moving papers or some other writing which set forth the conduct being sanctioned. As a result, reversal and remand are required so the trial court may either prepare an appropriate written order or vacate its award of sanctions. (Childs v. PaineWebber Incorporated (1994) 29 Cal.App.4th 982, 996-997, 35 Cal. Rptr.2d 93.)[10]
While our reversal seemingly makes it unnecessary to reach the mediation confidentiality issues raised by appellants, we must do so for the guidance of the trial court on remand in order to fully determine the legal issues necessary to a final resolution of this matter. (Code Civ. Proa, § 43; Salsbery v. Ritter (1957) 48 Cal.2d 1, 7, 306 P.2d 897.) We also reach these issues because they are of great importance to the parties and may avoid future litigation and because the issues are of continuing public interest. (Podolsky v. First Healthcare Corp. (1996) 50 Cal. App.4th 632, 652, 58 Cal.Rptr.2d 89.)[11]

2. Mediation Confidentiality

Evidence Code section 1119[12] states: "Except as otherwise provided in this chapter: [f] (a) No evidence of anything said or any admission made for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation is admissible or subject to discovery, and disclosure of the evidence shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given. [¶] (b) No writing, as defined in Section 250, that is prepared for the purpose of, in the course of, or pursuant to, a mediation or a mediation consultation, is admissible or subject to discovery, and disclosure of the writing shall not be compelled, in any arbitration, administrative adjudication, civil action, or other noncriminal proceeding in which, pursuant to law, testimony can be compelled to be given, [f] (c) All communications, negotiations, or settlement discussions by and between participants in the course of a mediation or a mediation consultation shall remain confidential."
Section 1121 provides: "Neither a mediator nor anyone else may submit to a court *926 or other adjudicative body, and a court or other adjudicative body may not consider, any report, assessment, evaluation, recommendation, or finding of any kind by the mediator concerning a mediation conducted by the mediator, other than a report that is mandated by court rule or other law and that states only whether an agreement was reached, unless all parties to the mediation expressly agree otherwise in writing, or orally in accordance with Section 1118."[13] Under section 1118, oral agreements between mediating parties are enforceable so long as they are transcribed or tape recorded. (§ 1118.)
Evidence which is otherwise admissible or subject to discovery outside of mediation proceedings does not become inadmissible or protected from disclosure simply because it was used during the mediation process. (§ 1120, subd. (a).) A communication or writing made or prepared as part of mediation proceedings may become admissible or discoverable if all parties agree, or if they were made by or on behalf of fewer than all the participants, those participants agree to the release, and the material does not disclose anything said or done or any admission made in the course of mediation. (§ 1122, subds. (a)(1), (2).) Any writings or communications covered by these provisions remain privileged after the mediation ends. (§ 1126.) Any reference to a mediation during any subsequent trial is grounds for a new trial. (§ 1128.) These provisions do not apply to certain Family Law proceedings or to settlement conferences. (§ 1117, subds. (b)(1), (2).)
Appellants contend these unambiguous provisions barred Judge Smith from making his report to the court and barred the trial court from considering the report and the declarations of Judge Smith and Foxgate's lawyer which recounted Stevenson's statements and conduct at the September 16, 1997, mediation session. Since we are called upon to construe various statutes, we rely on the familiar rules of statutory interpretation.
The objective of statutory interpretation is to ascertain and effectuate legislative intent. Our first step is to scrutinize the actual words of the statute and give them a plain and common sense meaning. We try to give meaning to every word and phrase to accomplish a result consistent with the legislative intent. Ordinarily, if the statutory language is clear and unambiguous, there is no need for judicial construction. (Hughes v. Board of *927 Architectural Examiners (1998) 17 Cal.4th 763, 775, 72 Cal.Rptr.2d 624, 952 P.2d 641.)
Ambiguity is not always a condition precedent to interpretation, however. The literal meaning of the words used in a statute may be disregarded to avoid absurd results or to give effect to manifest purposes that, in light of the legislative history, appear from the provisions considered as a whole. (Times Mirror Co. v. Superior Court (1991) 53 Cal.3d 1325, 1334, fn. 1, 283 Cal.Rptr. 893, 813 P.2d 240, hereafter Times Mirror.)
The Times Mirror court considered the scope of appellate review from trial court decisions under the California Public Records Act (Gov.Code, § 6250 et seq.) after the Court of Appeal reversed a trial court order which denied a newspaper's request for disclosure of the governor's appointment book and other scheduling materials. Although the Supreme Court reversed and held that the requested materials were exempt from disclosure, it rejected the state's contention that because appellate review could be had only by way of extraordinary writ, a review on the merits of the substantive legal issues was precluded.
The statute in issue, Government Code section 6259, former subdivision (c), had provided for review by appeal but was amended to substitute review by way of extraordinary writ instead as the sole means of reviewing a trial court order granting or refusing disclosure of certain public records. The court recognized that the plain language of the statute specified review only by way of writ, and that such review was ordinarily limited to acts in excess of jurisdiction, not to substantive issues such as an abuse of discretion, lack of substantial evidence to support the order, or an erroneous interpretation of the statute. (Times Mirror, supra, 53 Cal.3d at pp. 1333-1334, 283 Cal.Rptr. 893, 813 P.2d 240.) Even so, the legislative history and manifest legislative intent behind the statute compelled an interpretation which permitted the parties to raise substantive issues normally not permitted in writ review proceedings. This included legislative analyses showing that the bill was intended to speed appellate review of trial court rulings under the Public Records Act. (Id. at pp. 1334-1335, 283 Cal.Rptr. 893, 813 P.2d 240.)
The Supreme Court also relied on the objectives of the statutory scheme to justify a more liberal interpretation of the disputed provision. "Moreover, we believe such an interpretation to be more fully in accord with the Act's express purpose of broadening the public's access to public records. [Citation.] There is no indication that the Legislature, in amending [Government Code] section 6259, intended sub silentio to shelter trial court orders, particularly those denying disclosure of public records, from appellate oversight. Nor in light of our responsibility to avoid absurd results [citation], can we believe that the Legislature could have intended the chaos which might otherwise result from a construction of the statute disallowing review on the merits of conflicting decisions in the trial courts." (Id. at p. 1335, 283 Cal.Rptr. 893, 813 P.2d 240, original italics.)
The same principles of statutory interpretation relied on in Times Mirror are equally applicable here. Section 1119 is derived in large part from former section 1152.5. (Rinaker v. Superior Court (1998) 62 Cal.App.4th 155, 165, 74 Cal.Rptr.2d 464, hereafter Rinaker; see Cal. Law Revision Com. com., West's Ann. Evid.Code, § 1119 (1999 pocket supp.) p. 46.) Former section 1152.5 was designed to protect "information disclosed during mediation to encourage this alternative to a judicial determination of the action. The same policy that protects offers to compromise (Section 1152) justifies protection to information disclosed in a mediation." (See Cal. Law Rev. Com. com., West's Ann. Evid.Code, former § 1152.5 (1995 ed.) p. 527.)
*928 The public policy underlying section 1119 is "`... to promote mediation as a preferable alternative to judicial proceedings by providing confidentiality.' [Citation.]" (Rinaker, supra, 62 Cal. App.4th at pp. 165-166, 74 Cal.Rptr.2d 464.) "`Confidentiality is absolutely essential to mediation. This is not simply to allow parties to keep their dispute out of the public limelight. It is essential for the parties to feel confident that anything they reveal privately to the mediator or in open mediation sessions cannot be used against them should the mediation fail. Otherwise, parties would be reluctant to make the kinds of concessions and admissions that pave the way to settlement.'" (Ryan v. Garcia (1994) 27 Cal.App.4th 1006, 1010, 33 Cal.Rptr.2d 158, quoting Knight et al., Cal. Practice Guide: Alternative Dispute Resolution (The Rutter Group 1993) § 3.25, p. 3-5, original italics.) Under former section 1152.5, the Legislature "manifested its intent to protect a broad range of statements from later use as evidence in litigation...." (Id. at p. 1011, 33 Cal. Rptr.2d 158.)
Section 1121, which prevents the mediator from issuing reports, assessments or findings, was derived from former section 1152.6, which prohibited declarations and findings of any kind by a mediator. (See Cal. Law. Rev. Com. com., West's Ann. Evid.Code, § 1121 (1999 pocket supp.) pp. 48-49.) Section 1121 focuses "on preventing coercion. As Section 1121 recognizes, a mediator should not be able to influence the result of a mediation or adjudication by reporting or threatening to report to the decisionmaker on the merits of the dispute or reasons why mediation failed to resolve it. Similarly, a mediator should not have authority to resolve or decide the mediated dispute, and should not have any function for the adjudicating tribunal with regard to the dispute, except as a non-decisionmaking neutral." (See Cal. Law Rev. Com. com., West's Ann. Evid. Code, § 1121 (1999 pocket supp.) p. 48.)
As a result, parties and their lawyers who engage in mediation can speak freely, acknowledge weaknesses in their case, admit wrongdoing and offer to make concessions, secure in the knowledge such statements will not be used against them should mediation fail and the matter go to trial. Nor can the mediator step out of his neutral role and influence the process by making findings, recommendations, or evaluations about the dispute.
While confidentiality is essential to make mediation work, so too is the meaningful, good faith participation of the parties and their lawyers. Without that, there will be few if any confidential statements to protect. These evidentiary privileges were enacted to promote and encourage mediation. We do not believe the Legislature intended them as an immunity from sanctions, shielding parties to court-ordered mediation who disobey valid orders governing their participation in the mediation process, thereby intentionally thwarting the process to pursue other litigation tactics.[14] If the mediator or an aggrieved party can not tell the court about another party's sanctionable conduct, it is hard to imagine who else would do so.[15]
There is more at stake here than monetary sanctions, however. What if a party *929 to a particularly fractious and emotional dispute attacked or threatened an opposing party or counsel during a mediation session? Should those parties and the mediator be prevented by the mediation confidentiality privileges from alerting the trial court to such conduct? We think not, but such would be the absurd result if we follow the uncritical interpretation urged by appellants.
Muzzling the parties and the mediator in such circumstances would not only effectively preclude a party from seeking and obtaining sanctions. Because the court would have no way of learning that its orders had been disobeyed or that some serious misconduct occurred which warrants judicial oversight, the court would be stripped of its inherent power to police and control its own processes. (See Cal. Rules of Court, rule 227, and Code Civ. Proc, § 177.5 [the court on its own motion or that of a party can impose sanctions up to $1,500 for bad faith violation of court orders or failure to participate in good faith in any court-ordered conference]; Code Civ. Proc, §§ 128, subd. (a)(2)-(5) [court has power to enforce its orders, provide for orderly conduct of its proceedings, compel obedience to its orders, and control conduct of persons connected with a judicial proceeding before the court]; 177, subd. 2 [court has power to compel obedience to its lawful orders]; 1209, subds. (a)2, 4 and 5 [civil contempt committed by breach of the peace or boisterous conduct tending to interrupt a trial or judicial proceeding, abuse of the process of proceedings of the court, and by disobedience of any lawful order or process of the court].) We decline to hamstring the courts in this manner.
The exceptions we craft here are narrow ones, however. The courts, counsel and mediators are warned that only such information as is reasonably necessary should be put before the court. To this end, we note that Judge Smith's report included certain extraneous information. In keeping with the neutrality expected of mediators, the report should not have included recommendations, drawn conclusions, or characterized the conduct and statements being reported. That is for the parties to argue and the trial court to decide. Instead, the report should be no more than a strictly neutral account of the conduct and statements being reported, along with such other information as required to place those matters in context. On remand, the trial court is to disregard any portions of Judge Smith's report or Foxgate's and appellants' declarations which are contrary to our decision.[16]

DISPOSITION
For the reasons set forth above, we reverse and remand for the trial court to prepare, consistent with this decision, a written order as required by Code of Civil Procedure, section 128.5, subdivision (c), or vacate its order awarding sanctions to Foxgate. Each party to bear its own costs on appeal.
ARMSTRONG, J., concurs.
TURNER, P.J., concurs.
I concur in the judgment. In my view, defendants and their counsel are estopped to assert that the mediator's report was inadmissible. This is because defendants *930 and their counsel previously agreed that the mediator could make a report to the court.
On January 22, 1997, with the consent of all of the parties and their counsel, the trial court issued a case management order which stated in pertinent part: "The Special Master shall rule on all discovery disputes, shall assist in the implementation of this Order and shall preside over mediation conferences and make any orders governing the attendance of parties and their representatives thereat. The Special Master shall have the authority to establish discovery stays, revise discovery stays in place, hear and determine any and all motions seeking to revise the Case Management Order, report his findings to the Court, and make recommendations to the Court." Defendants and their counsel explicitly agreed to allow the mediator to make reports to the court as he did. Therefore, they are estopped from later arguing the mediator could not do what they explicitly agreed he couldreport to the court. (Lentz v. McMahon (1989) 49 Cal.3d 393, 398-399, 261 Cal.Rptr. 310, 777 P.2d 83; Golden State Homebuilding Associates v. City of Modesto (1994) 26 Cal. App.4th 601, 614, 31 Cal.Rptr.2d 572; Estate of Wilson (1976) 64 Cal.App.3d 786, 801, 134 Cal.Rptr. 749.) On this ground, I would allow the trial court in making its findings on remand to rely on the mediator's report.
One final note is in order. Defendants and their counsel argue that the present case was subject to the automatic bankruptcy stay as to Bramalea Ltd. However, defendants and their counsel have failed to provide sufficient documentation of the existence of a stay. Upon issuance of the remittitur, if the automatic stay is in effect, then defendants and their counsel should submit sufficient evidence of its existence. If the automatic stay is in effect, it of course must be honored as to any claims against Bramalea Ltd. (11 U.S.C, § 362(a); Borg-Warner Acceptance v. Hall (11th Cir.1982) 685 F.2d 1306, 1308; Shah v. Glendale Federal Bank (1996) 44 Cal.App.4th 1371,1375, 52 Cal.Rptr.2d 417; Raczynski v. Judge (1986) 186 Cal.App.3d 504, 510, 230 Cal.Rptr. 741.)
NOTES
[1] For ease of reference, we will refer to Bramalea, Ltd., and Bramalea California, Inc., collectively as "Bramalea."
[2] For ease of reference, we will sometimes refer to Bramalea and Stevenson collectively as "appellants."
[3] The motion was denied September 8, 1997. A writ petition challenging the denial of the disqualification motion was denied by this court on September 26, 1998. (Bramalea California, Inc. v. Superior Court (Sept. 26, 1998, B115478) [nonpub. opn.]) Appellants have gone to great lengths to vilify Judge Smith and reargue the merits of their disqualification motion, matters which we deem either inappropriate or irrelevant.
[4] No relation to the author of this opinion.
[5] The opposition also included a declaration from Jonathon Sher, coverage counsel for Bramalea's insurer. Sher said he participated in the mediation session, which was cancelled when Foxgate refused to go forward. Sher also stated that Judge Smith said and did nothing during the session except to meet privately with counsel for Foxgate.
[6] Appellants incorrectly characterize the second sanctions motion as an untimely motion for reconsideration under Code of Civil Procedure section 1008. Because the court denied the first motion without prejudice to renewing it at a later time, the second sanctions motion was exempt from the requirements of section 1008. (Clausing v. San Francisco Unified School Dist. (1990) 221 Cal.App.3d 1224, 1232, 271 Cal.Rptr. 72, citing Chambreau v. Coughlan (1968) 263 Cal.App.2d 712, 717-718, 69 Cal.Rptr. 783; accord Devereaux v. Latham & Watkins (1995) 32 Cal.App.4th 1571, 1587, 38 Cal.Rptr.2d 849; San Bernardino City Unified School Dist. v. Superior Court (1987) 190 Cal.App.3d 233, 241, 235 Cal.Rptr. 356.)
[7] Appellants contend, without explanation, that "[t]here was never any requirement or request that appellants bring their experts to mediation." Judge Smith's August 20 letter stated the parties "should" bring their experts. Among the meanings assigned to "should" are an expression of obligation or request or to soften a direct statement. (Webster's New Collegiate Diet. (9th ed.1988) p. 1090.) Combined with Judge Smith's statement that the purpose of the mediation was to bring the experts together, there is substantial evidence that he used the word "should" in its imperative sense.
[8] Appellants' brief raises the work product argument in passing, without discussion or citation to authority, as part of their statement of facts. We therefore deem the issue waived on appeal as well. (Landry v. Berryessa Union School Dist. (1995) 39 Cal.App.4th 691, 699-700, 46 Cal.Rptr.2d 119.)
[9] As discussed post, we hold that the trial court may consider portions of the mediator's report and Foxgate's supporting evidence.
[10] In so holding, we reject Foxgate's contention that the court incorporated its moving papers by reference because the minute order stated the motion had been granted as prayed. What Foxgate prayed for was more than $30,000 in sanctions and that is what it was awarded.
[11] We decline to reach any other issues raised on appeal.
[12] All further statutory references are to the Evidence Code unless otherwise specified.
[13] Foxgate contends section 1121 was not applicable because it was not enacted until 1997 and did not take effect until 1998, after Judge Smith issued his report and recommendations. (See West's Ann. Evid.Code, § 1121 (1999 pocket supp.) p. 48.) At the time of Judge Smith's report, however, former section 1152.6 was still in effect, providing that "[a] mediator may not file, and a court may not consider, any declaration or finding of any kind by the mediator, other than a required statement of agreement or nonagreement, unless all parties in the mediation expressly agree otherwise in writing prior to commencement of the mediation....'' Regardless, section 1121 was in effect when Foxgate brought, and the trial court granted, the renewed sanctions motion.

Foxgate also contends, and the concurring opinion agrees, that section 1121 was not violated because the CMO said Judge Smith could make reports to the court, pointing to language of the CMO which stated: "The Special Master shall have the authority to establish discovery stays, revise discovery stays in place, hear and determine any and all motions seeking to revise the [CMO], report his findings to the Court, and make recommendations to the Court." Under the law applicable at the time the CMO was issued, a mediator was prohibited from making any findings. (Former § 1152.6.) Nothing in the quoted portion of the CMO states that Judge Smith, in his capacity as mediator, was permitted to make findings of any kind. When combined with the CMO's express reservation of all applicable mediation privileges, the quoted portion of the CMO instead refers only to Judge Smith's duties as special master in connection with disputes about discovery matters and the CMO itself.
[14] We are not the first court to hold that the plain language of the mediation confidentiality privileges must sometimes yield to other competing interests. The court in Rinaker, supra, 62 Cal.App.4th at pages 165-167, 74 Cal.Rptr.2d 464, considered the applicability of those privileges in a juvenile dependency proceeding where a minor had been charged with committing a crime. The court held that the minor's constitutional right to confront and cross-examine witnesses took precedence, permitting a mediator to be called to impeach a witness with statements the witness made during mediation.
[15] Appellants effectively concede this point, stating in their brief that "but for" Judge Smith's report and Foxgate's motion, the court would never have learned of these events.
[16] Our holding does not consider the effect of section 703.5 on Judge Smith's declaration, which incorporated by reference his report. That section provides that judges, arbitrators and mediators are not competent to testify in any subsequent civil proceeding about any statement, conduct or decision which occurred in conjunction with a prior proceeding. Although his declaration might have been admissible under the statute's exception for conduct or statements which "could .. . give rise to civil or criminal contempt," we need not reach the issue because appellants did not raise it either below or on appeal and are deemed to have waived it. (§ 703.5.)