[No. B125178. Second Dist., Div. Two. Sept. 22, 1999.]

TOKIO MARINE & FIRE INSURANCE CORP., Plaintiff, v.
WESTERN PACIFIC ROOFING CORPORATION, Defendant and
Respondent;
CERTAIN UNDERWRITERS AT LLOYD'S, Appellant.

**COUNSEL**

Lillick & Charles and Walter T. Johnson for Appellant.

Norby & Brodeur and John G. Tavetian for Defendant and Respondent.

**OPINION**

**ZEBROWSKI, J.**—The trial court summarily named an insurer as an additional judgment debtor on the judgment in this case. Although the insurer insured a party to this action, the insurer itself was not a party and no basis appears on which it could be summarily named as a judgment debtor. We therefore reverse.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1988, the Department of Water Resources contracted to have its Pearblossom Pumping Plant expanded. In 1991, as the expansion work progressed, a fire occurred, causing extensive damage. Prior to any litigation, an "Interim Funding Agreement" (IFA) was concluded among the general contractor (Torno America, Inc.), its insurer (Certain Underwriters at Lloyd's,[1] appellants here), the roofing contractor (Western Pacific Roofing Corporation, respondent here) and its insurer (United States Fidelity & Guaranty Co.). Pursuant to the IFA, the insurers contributed funds in order to effect prompt repairs and mitigate damages. The IFA provided that the financial contributions were subject to reallocation by binding arbitration at a later date.

A different insurer (which had insured the supplier of pumping equipment damaged in the fire) later commenced subrogation litigation. Various cross-claims were then filed by a variety of parties, and a number of claims were settled. The remaining parties were then realigned so that the general contractor became the plaintiff and the roofing contractor became the defendant. In 1997, the case went to jury trial. Near the time of commencement of trial, a stipulation was executed.[2] The stipulation formed the basis of the judgment against the Underwriters which is the subject of this appeal.

On one side of the stipulation were the general contractor and its insurer (the Underwriters), defined in the stipulation as the "Torno parties." On the other side were the roofing contractor and its insurer, defined in the stipulation as the "Western parties." The stipulation recited that each side had contributed substantial sums pursuant to the IFA, that the IFA had provided that "the amounts contributed would be reallocated based upon the eventual resolution of this matter," and that the IFA "contains provisions for alternative dispute resolution [binding arbitration] for this reallocation which the

---

[1]More specifically, "Certain Underwriters at Lloyd's Subscribing Severally and not Jointly to the Policy of Insurance Evidenced by Cover Note No. 00-9069-91-A-01." For ease of reference we refer to the appellants as "Underwriters."

[2]The stipulation was signed in counterparts over a span of about a week beginning shortly before the commencement of trial and ending shortly after trial had commenced.

parties now wish to modify." The "parties to this Stipulation" then agreed that "the money funded under the interim agreement will be reallocated amongst and between the parties according to the factual rulings by the jury and legal findings by the judge."

Directly pertinent to this appeal, the stipulation also provided that "if the court finds that defendant Western Pacific Roofing Corporation is not liable or if plaintiff [the general contractor] is unable to establish Western's liability, then the defendant Western parties will be reimbursed by the Torno parties [previously defined as the general contractor plus its insurer, the Underwriters] all sums contributed by the Western parties to the interim agreement . . ." The stipulation further provided that "the amount subject to this Stipulation will be incorporated by the court into the final judgment in the underlying case," and that the existence of the IFA and the amounts advanced would not be disclosed to the jury, but instead "the judge shall apply the jury and judge findings to incorporate these findings into the judgment in this case."

Significantly, the stipulation did not provide that the Underwriters submitted to jurisdiction, that the Underwriters would be added as a party to the litigation, that the Underwriters agreed to be named as judgment debtors in this litigation, or that the Underwriters waived their policy limits or policy defenses.

According to the Underwriters, the purpose of the stipulation was simply to avoid the time and cost of the reallocation arbitration called for by the IFA, which was expected to duplicate findings which could be made at trial. Hence, again according to the Underwriters, the stipulation simply eliminated the need for the binding reallocation arbitration called for in the IFA by specifying findings to be made at trial, by providing for incorporation of those findings into the judgment, and by providing for reallocation to be made in light of those findings.

According to respondent roofing contractor, the effect of the stipulation was quite different. The roofing contractor's different interpretation became an issue because of two events: the result at trial and the delay caused by an ensuing coverage dispute. First, the jury found that the roofing contractor's actions had not contributed to the fire. The general contractor consequently took nothing by its complaint. Instead, the amounts contributed by the Western parties (the roofing contractor plus its insurer) were incorporated into the judgment pursuant to the stipulation. This resulted in a judgment in favor of the roofing contractor against the general contractor in an amount

exceeding (including interest) $1 million. Following the entry of this judgment, a coverage dispute arose among various carriers involving issues of primary versus excess layers, additional insured endorsements, etc. The coverage dispute caused a delay in payment to the roofing contractor.

After about a year's delay, the roofing contractor made a motion to correct clerical error by adding the Underwriters to the judgment as additional judgment debtors. This motion was based on the roofing contractor's interpretation of the stipulation's definition of the "Torno parties" to include both the general contractor and its insurer. Since the stipulation stated that the roofing contractor would be reimbursed by the Torno parties, and since the Underwriters were included in that definition, the roofing contractor contended that it was entitled to be reimbursed by the Underwriters. The roofing contractor hence moved that the Underwriters be added as judgment debtors.

The Underwriters opposed for several reasons, apparently chief among them that their addition as judgment debtors would impose on them a liability far in excess of their policy limits. Before the time of the roofing contractor's motion, the Underwriters had already contributed all but about $135,000 of their $1 million policy limits to the IFA. Hence only about $135,000 in policy limits remained, while the judgment was in excess of $1 million.

The trial court nevertheless granted the roofing contractor's motion to correct clerical error, naming the Underwriters as judgment debtors on the judgment. This subjected the Underwriters to liability which exceeded the limits of the insurance they had issued by approximately $865,000.

Claiming that the stipulation was not intended to waive policy limits or defenses or to subject them to judgment, and that there is no authority for the summary procedure applied by the court, the Underwriters appeal.

## II. ISSUES ON APPEAL

On appeal, respondent acknowledges that it does not claim that the Underwriters are the alter egos of their insured, the general contractor. (Cf. *Triplett* v. *Farmers Ins. Exchange* (1994) 24 Cal.App.4th 1415 [29 Cal.Rptr.2d 741] [insurer cannot be added to judgment on theory that insurer is alter ego of named defendant].) Respondent nevertheless contends that the Underwriters can be added to the judgment pursuant to Code of Civil Procedure sections 187 and 473, subdivision (d), on grounds that they were omitted

only through clerical error.[3] Respondent further contends that the stipulation was properly summarily enforced pursuant to section 664.6, and that the Underwriters were not denied due process because the judgment was based on their agreement. For the reasons discussed below, we disagree with respondent and reverse the judgment against the Underwriters.

## III. DISCUSSION

### A. *Section 187 Does Not Support Adding the Underwriters as Judgment Debtors*

Section 187 provides: "When jurisdiction is, by the constitution or this Code, or by any other statute, conferred on a Court or judicial officer, all the means necessary to carry it into effect are also given; and in the exercise of this jurisdiction, if the course of proceeding be not specifically pointed out by this Code or the statute, any suitable process or mode of proceeding may be adopted which may appear most conformable to the spirit of this code."

This statute does not support the addition of the Underwriters to the judgment as judgment debtors. The general rule was stated in *Triplett* v. *Farmer Ins. Exchange, supra*, 24 Cal.App.4th 1415: "Although section 187 has been interpreted to allow flexibility in proceedings, it has never been construed to allow imposition of liability on an entity which was never a party to the action. Cases which have used section 187 to add new parties as additional judgment debtors have always been rooted in the 'alter ego' concept that the original party and the new party were one and the same. Adding the alter ego entity after judgment, therefore, amounted to little more than correcting a misnomer in naming the defendant. [Citation.] [Plaintiff] has not cited, nor has our research uncovered, any case extending section 187 to permit addition of a defendant by postjudgment motion *except* where the added defendant was found to be the alter ego of the original defendant." (*Id.* at p. 1420.)

*Triplett* notwithstanding, a recent bankruptcy decision "looked to the 'equitable principles regarding alter ego' and concluded that although the added judgment-debtor did not meet the formal requirements for alter ego liability, it nevertheless fit within the theory underlying amendment of a judgment based on alter ego liability. That is, 'the court is not amending the judgment to add a new defendant but is merely inserting the correct name of

---

[3]All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the real defendant.' [Citation.]" (*In re Levander* (9th Cir. 1999) 180 F.3d 1114, 1122 [bankrupt corporation defrauded court by transferring all assets to partnership and concealing transfer; partnership added to judgment]; see also *Carr* v. *Barnabey's Hotel Corp.* (1994) 23 Cal.App.4th 14, 21 [28 Cal.Rptr.2d 127] [right party sued under wrong name, posttrial amendment to include correct name in judgment approved even though all alter ego elements not established].) Under such circumstances these courts have "reasoned that . . . not allowing amendment due to the absence of a finding of alter ego would 'work an injustice.' [Citation.]" (*In re Levander, supra,* 180 F.3d at p. 1122, quoting from *Carr, supra,* 23 Cal.App.4th at p. 23.)

Respondent acknowledged both in its trial court filings and in its appellate briefing that it does not contend that the Underwriters are the alter egos of the general contractor. Further, in no way can the court's action in this case be construed as " 'merely inserting the correct name of the real defendant' " (*Carr* v. *Barnabey's Hotel Corp., supra,* 23 Cal.App.4th at p. 21.), since here the general contractor and the Underwriters are clearly distinct and separate entities. Hence section 187 does not support the addition of the Underwriters as judgment debtors in this case.

B. *There Was No Basis to Add the Underwriters as Judgment Debtors on Grounds of Clerical Error Pursuant to Section 473.*

Section 473, subdivision (d), provides authority for correcting clerical errors in judgments, "so as to conform to the judgment . . . directed." The controlling principle is that although clerical error may freely be corrected postjudgment, judicial error may be corrected only by normal procedures for attacking a judgment (motion for new trial, appeal, independent action in equity, etc.). (See, e.g., 7 Witkin, Cal. Procedure (4th ed. 1997) Judgment, § 67, p. 594.) The record presented on this appeal reveals no clerical error.

██ The test which distinguishes clerical error from possible judicial error is simply whether the challenged portion of the judgment was entered inadvertently (which is clerical error) versus advertently (which might be judicial error, but is not clerical error). (7 Witkin, Cal. Procedure, *supra,* Judgment, § 68, p. 595.) Unless the challenged portion of the judgment was entered inadvertently, it cannot be changed post judgment under the guise of correction of clerical error. For example, in *Lankton* v. *Superior Court* (1936) 5 Cal.2d 694, 696 [55 P.2d 1170], the Supreme Court explained: "The judgment in this case was the identical judgment which the trial court intended to render. There was no mistake in its entry, and it expressed in apt and definite terms the conclusion at which the trial court arrived during the

trial of the action. If the court misconstrued the evidence before it, or misapplied the law applicable to the facts disclosed by the evidence, or was even misled by counsel, such an error was in no sense a clerical error . . . ." (See also *Bowden* v. *Green* (1982) 128 Cal.App.3d 65, 70 [180 Cal.Rptr. 90] [quoting *Lankton*].)

The purpose of postjudgment correction of clerical errors is to ensure that the court's records "speak the truth." (7 Witkin, Cal. Procedure, *supra*, Judgment, § 69, p. 597.) Hence postjudgment alteration is appropriate to correct mistakes made in naming a party or in failing to name a party inadvertently omitted. (See, e.g., *id*. at § 70, p. 598.) In *Estate of Goldberg* (1938) 10 Cal.2d 709 [76 P.2d 508], for example, a will provided for distribution to four children, and the court ordered distribution accordingly. Through inadvertence, however, only three of the children's names were placed in the judgment. This was inadvertent clerical error which could be corrected post judgment in the trial court, to accomplish the goal that the court's records speak the truth.

In the instant case, by contrast, there is no evidence that anyone suggested to the trial judge at the time of rendition of judgment that the Underwriters be named as judgment debtors. There is no evidence that the court had an intent to include them as judgment debtors. There is no evidence that their name was omitted through mere inadvertence. Hence there is no support for the assertion that this was clerical error.

The contention that the omission of the Underwriters as judgment debtors was mere inadvertent clerical error is further rebutted by the fact that, at the time judgment was rendered, the Underwriters were not parties to the litigation and the trial court had no jurisdiction over them. (Cf. *Triplett* v. *Farmers Ins. Exchange, supra*, 24 Cal.App.4th at pp. 1419-1421 [finding that trial court had no jurisdiction over insurer of a party].) As discussed in more detail below, were we to accept respondent's contention that the trial court intended to name the Underwriters as judgment debtors, we would be concluding that the court intended an act that would have constituted judicial error. Such a conclusion would be inharmonious with the general rule that trial court rulings are presumed correct. (See, e.g., *Winograd* v. *American Broadcasting Co.* (1998) 68 Cal.App.4th 624, 631 [80 Cal.Rptr.2d 378] [trial court rulings presumed correct].) Instead of presuming that the trial court ruled correctly, we would be concluding that the trial court intended to commit a judicial error, but inadvertently did not. Moreover, even if we were to so conclude, such a conclusion would presumably be ineffectual. The law could hardly require the enforcement of a judicial error, which we later

conclude the trial court intended to, but did not, commit. No case has been found in which the trial court's failure to commit judicial error was later found to constitute clerical error.

The stipulation constitutes a contract. (See, e.g., *Winograd* v. *American Broadcasting Co.*, *supra*, 68 Cal.App.4th at p. 632.) However, it contains neither an express submission to jurisdiction by the Underwriters, nor an express waiver of policy limits or policy defenses, nor an express agreement to be named as judgment debtors in the action between the general contractor and the roofing contractor. The questions of whether the stipulation should be interpreted as a waiver of policy limits and policy defenses or whether the liability of the Underwriters continues to be limited by the terms of their policy, or whether the Underwriters may have any other defenses to enforcement of the contract remain open and unadjudicated. A court's power to correct clerical error does not allow the court to leapfrog inconvenient questions of contract interpretation and proceed summarily to judgment under the guise of correcting "clerical" error.

There was no basis for the trial court to add the Underwriters as judgment debtors pursuant to section 473.

C. *There Was No Basis to Add the Underwriters as Judgment Debtors Pursuant to Section 664.6.*

 Respondent contends that the trial court properly added the Underwriters as judgment debtors pursuant to section 664.6. Yet that section merely provides that "[i]f *parties to pending litigation* stipulate . . . for settlement of the case . . . the court, upon motion, may enter judgment pursuant to the terms of the settlement." (*Ibid.*, italics added.) The Underwriters were not parties to the litigation; section 664.6 therefore does not apply.

D. *The Summary Addition of the Underwriters as Additional Judgment Debtors Violated Due Process.*

 The Underwriters entered into the stipulation—a contract—as a result of which it can be *argued* that the Underwriters may have agreed to abide by the results of this litigation in certain respects. But by becoming parties to such a contract, the Underwriters did not thereby automatically become parties to this litigation. This litigation was an action to determine fault for the fire as between the general contractor and the roofing contractor. The Underwriters themselves did not assert any claim in this action, and no litigant sued the Underwriters in this litigation to determine any issue whatsoever.

The Underwriters' entry into the stipulation was not tantamount to an intervention. "An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons, either by joining the plaintiff in claiming what is sought by the complaint, or by uniting with the defendant in resisting the claims of the plaintiff, or by demanding anything adversely to both the plaintiff and the defendant . . . ." (§ 387.) The stipulation alone could not convert the Underwriters from nonparties to this litigation to parties in intervention. Under section 387, intervention is only available where an "unconditional right to intervene" is conferred by some other provision of law, or where "the person seeking intervention claims an interest relating to the property or transaction which is the subject of the action and that person is so situated that the disposition of the action may as a practical matter impair or impede that person's ability to protect that interest, unless that person's interest is adequately represented by existing parties . . . ." (§ 387, subd. (b).)

Even then, there are procedural requirements that must be followed to be made a party to the action by intervention, including not only "timely application" to the court, but the fundamental prerequisite that intervention "is made by complaint, setting forth the grounds upon which the intervention rests, filed by leave of the court and served upon the parties . . . ." (§ 387, subd. (a).) At that point, the parties so served are permitted to "move, demur, or otherwise plead" to the complaint in intervention within 30 days after service. (*Ibid.*)

The Underwriters' entry into the stipulation also cannot be considered tantamount to a "confession of judgment"—the procedure available to one who wishes to be bound to a judgment "without action." (§ 1132, subd. (a).) Even in that context there are numerous statutory due process safeguards, including the requirement of a detailed statement in writing (§ 1133), and the requirement that "an attorney independently representing the defendant sign[] a certificate that the attorney has examined the proposed judgment and has advised the defendant with respect to the waiver of rights and defenses under the confession of judgment procedure and has advised the defendant to utilize the confession of judgment procedure." (§ 1132, subd. (b).)

When respondents moved to add the Underwriters as judgment debtors, the Underwriters filed opposition. For the reasons noted above, the trial court should have found that opposition meritorious. Instead, the trial court granted the motion. Thus the proceedings moved in one step from a motion against a nonparty, which should have been denied, directly to judgment against a nonparty. There was no service of summons or complaint setting

forth the issues to be joined, no discovery, no setting of a trial date, no opportunity to assemble evidence or witnesses on the merits or to prepare for a trial, no opportunity to brief and be heard on the legal issues raised, no opportunity to cross-examine adverse witnesses, and no trial (either jury or nonjury). This was a rather straightforward denial of due process. (See, e.g., 7 Witkin, Summary of Cal. Law (9th ed. 1988) Constitutional Law, §§ 502-503, pp. 694-695.)

"For over 50 years California has recognized that a judgment may not be entered either for or against one who is not a party to an action or proceeding. [Citations.]" (*Bronco Wine Co.* v. *Frank A. Logoluso Farms* (1989) 214 Cal.App.3d 699, 717 [262 Cal.Rptr. 899].) "Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. [Citations.] Due process is denied because the nonjoined party has not been given notice of the proceedings or an opportunity to be heard. [Citation.] Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process. Without jurisdiction over the parties, an in personam judgment is invalid. [Citation.]" (*Ibid.*) Although there have been "rare instances [in which] appellate courts have found that trial courts had jurisdiction to render judgments over nonparties to lawsuits," (*id.* at p. 718), no reason appears why this case should be counted in that category.

The example of such a "rare instance" given by the *Logoluso* court was the decision in *Severdia* v. *Alaimo* (1974) 41 Cal.App.3d 881 [116 Cal.Rptr. 405]. In that case, an attorney represented a wife in a dissolution action and was not a party to that lawsuit. A check for proceeds of the sale of the marital residence was made payable to the wife and the attorney and delivered to the attorney. He refused to endorse the check and turn it over to the wife, claiming a lien against the funds for fees and costs. The wife filed an order to show cause in the action to have the attorney show cause why he should not pay over the proceeds. (41 Cal.App.3d at p. 882.) The attorney generally appeared in response to the order to show cause, and filed a declaration "ask[ing] the trial court to adjudicate his right to the funds in his possession." (*Id.* at p. 890.) When the attorney appealed the adverse result on the grounds of a lack of jurisdiction, the appellate court found his general appearance and his affirmative request for relief from the court conferred jurisdiction in the trial court "to determine whether there was any merit to his claim." (*Ibid.*)

The situation here is distinguishable. The Underwriters arguably submitted to the personal jurisdiction of the court by opposing the motion to correct

clerical error on its merits rather than specially.[4] However, such a submission to personal jurisdiction by opposing the merits of the limited motion did not displace the due process requirements for putting the issues regarding the interpretation of contracts such as the stipulation here in issue before the court, nor did it displace the Code of Civil Procedure.

The fundamental principle violated here has long been recognized. In *Baar* v. *Smith* (1927) 201 Cal. 87 [255 P. 827], the California Supreme Court quoted the "following appropriate language" from a United States Supreme Court case dating to the past century: " 'Tho the court may possess jurisdiction of a cause, of the subject-matter, and of the parties, it is still limited in its modes of procedure, and in the extent and character of its judgments. It must act judicially in all things, and cannot then transcend the power conferred by the law. If, for instance, the action be upon a money demand, the court, notwithstanding its complete jurisdiction over the subject and parties, has no power to pass judgment of imprisonment in the penitentiary upon the defendant. If the action be for a libel or personal tort, the court cannot order in the case a specific performance of a contract. If the action be for the possession of real property, the court is powerless to admit in the case the probate of a will. . . . The judgments mentioned, given in the cases supposed, would not be merely erroneous, they would be absolutely void; because the court in rendering them would transcend the limits of its authority in those cases.' " (*Baar, supra*, 201 Cal. at p. 100, quoting from *Windsor* v. *McVeigh* (1876) 93 U.S. (3 Otto.) 274, 282 [23 L.Ed. 914, 917].)

In *Overell* v. *Overell* (1937) 18 Cal.App.2d 499 [64 P.2d 483], the trial court was presented with an action and cross-action to quiet title, as a result of which one party was awarded certain property. In addition to deciding the title issues as between the parties, however, the trial court adjudicated that as a result of the agreement between the prevailing party and her counsel, the attorney was entitled to an undivided percentage interest in the property awarded. The appellate court reversed, stating: "The judgment purports to adjudicate and establish the rights of the attorney under the agreement as against his client. This, of course, could have been done only after the trial of an action in which the parties to the agreement had been given an opportunity to present their respective demands and such defenses, if any, as either might wish to assert against the demands of the other. It could not be done *ex parte* nor in a summary manner. The right to be heard before

---

[4]We do not criticize this tactical choice by the Underwriters. Appearing only specially to contest jurisdiction is a dangerous tactic, since it precludes opposition on the merits. Here, a special appearance should have been effective to establish no personal jurisdiction over the Underwriters. Since that was not crystal clear, however, it was a reasonable alternative tactical choice to make an argument on the merits, which also should have prevailed.

judgment is given is not only guaranteed by the Constitution but is carried through all of the systems of procedure under which courts exercise their powers. The constitutional right to a day in court embraces the privileges granted by statute, for the powers of the court are limited not alone to what they may do but also to the manner in which it may be done. A judgment cannot be given against or in favor of one who.is not a party to the action. [Citations.] One who is not originally a party can become a party only by order of court upon proper application. [Citation.] A judgment must be confined to matters which have been placed in issue by the parties and those which are necessarily involved. [Citation.]" (*Overell, supra*, 18 Cal.App.2d at pp. 502-503.)

In this case, assuming the Underwriters were indeed obligated to respondent under the stipulation, respondent had a number of available options to obtain an adjudication that would satisfy basic notions of due process—e.g., file and serve a declaratory relief and/or breach of contract action, or a direct action against the insurer pursuant to Insurance Code section 11580.[5] Each option would put the Underwriters on notice of the issues to be joined, allow the assertion of affirmative defenses and discovery and preparation of a defense to those issues, and result in a trial or statutorily authorized dispositive motion procedure resolving those issues between the parties to that litigation.

Some might consider a lawsuit and potential trial an excessively cumbersome procedure for enforcing what amounts to an attempt to streamline a settlement, but that will not always be necessary. A clear statement of settlement, perhaps including a waiver of policy limits and policy defenses and an agreement to be named as a judgment debtor without further adjudicatory proceedings could have been included. If the parties intended to attempt to minimize the steps required to enable respondent to obtain a binding judgment against the Underwriters by making the Underwriters a party to the litigation, they could also have expressly so agreed. Upon the Underwriters' authorized addition as a party to pending litigation, section 664.6 would presumably have been applicable to any subsequent written settlement agreement.

---

[5]Insurance Code section 11580 and the case law interpreting that section require that various types of liability insurance policies be issued with particular provisions. One such mandatory provision is: "[T]hat whenever judgment is secured against the insured . . . in an action based upon . . . property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." (Ins. Code, § 11580, subd. (b)(2).) Since a section 11580 suit is "subject to [the policy's] terms and limitations," however, it could not be used to accomplish the result in the court below—a judgment in excess of policy limits.

That such provisions were not included in the agreement is at least some evidence that they were not intended. This evidence cannot simply be ignored and the stipulation summarily interpreted to the contrary without prior notice, and an opportunity to be heard and present evidence.

## IV. DISPOSITION

The judgment against the Underwriters is reversed. Appellant to recover costs on appeal.

Boren, P. J., and Mallano, J.,* concurred.

---

*Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.