Filed 3/23/22  Balakhane v. Sakhai CA2/4

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| PEYMAN BALAKHANE et al., | B307271 |
| Plaintiffs, | (Los Angeles County Super. Ct. No. BC531321) |
| v. | |
| MORIS SAKHAI et al., | |
| Defendants and Appellants; | |
| NATIONWIDE INSURANCE COMPANY et al., | |
| Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County, Jon R. Takasugi, Judge.  Affirmed.

Law Offices of George E. Omoko and George E. Omoko for Defendants and Appellants.

Grant, Genovese & Baratta, Lance D. Orloff for Respondent Nationwide Mutual Insurance Company.

Hinshaw & Culbertson, Ray Tamaddon, Travis Wall for Respondent Northfield Insurance Company.

## INTRODUCTION

This is the second appeal arising out of a 2018 settlement agreement resolving a dispute between defendants and appellants Moris Sakhai, Naziar Azadegan,[1] and California Capital Venture, Inc. (collectively, the Sakhais) and plaintiffs Peyman Balakhane, Pejman Balakhane, and L.A. Fashion Hub, Inc. (collectively, the Balakhanes).[2] Under the settlement agreement, entered orally on the record before the trial court, the Sakhais agreed to pay $750,000 to the Balakhanes. Of that amount, the parties agreed that $400,000 would be paid by the Sakhais' insurers, respondents Nationwide Insurance Company (Nationwide) and Northfield Insurance Company (Northfield), after the Sakhais executed a liability release. Counsel for the insurers agreed to these settlement terms on the record. The court retained jurisdiction to enforce the settlement agreement under Code of Civil Procedure section 664.6.[3]

Although the Sakhais did not execute the release as agreed, both they and respondents made the required payments under the settlement agreement. The trial court subsequently issued an order granting Nationwide a liability release pursuant to the settlement agreement. Two years later, the Sakhais filed a motion seeking to vacate the court's order issuing the policy release. They argued that the order was void because respondents were not parties to the litigation and therefore the court lacked jurisdiction over them at the time of the settlement. The Sakhais also challenged the court's authority to enforce the settlement agreement. The trial court denied the motion and the Sakhais appealed. We find no error and affirm.

## FACTUAL AND PROCEDURAL HISTORY

I.     *Litigation and Settlement Agreement*

---

[1]     The majority of the documents in the record spell Asadegan's first name as "Naziar." However, respondents' brief states the name as "Nazyar."
[2]     The Balakhanes have not appeared in this appeal.
[3]     All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

The Balakhanes filed a complaint against the Sakhais in December 2013, alleging causes of action for breach of contract, fraud, and related claims. The Balakhanes alleged that they rented commercial real property from the Sakhais starting in 2009. In 2011, the parties allegedly entered into a partnership, in support of which the Sakhais agreed to invest $2 million and the Balakhanes entered into a three-year lease for a warehouse owned by Moris Sakhai. The Balakhanes alleged that the Sakhais failed to make the full investment as promised and failed to provide the Balakhanes with their share of the profits from the partnership.

Also in December 2013, Moris Sakhai filed a separate unlawful detainer complaint against the Balakhanes, alleging that the Balakhanes failed to pay rent on the commercial property he owned. The trial court consolidated the two cases in April 2014.

The jury trial commenced on January 26, 2018. Following a mid-trial settlement conference on February 2, 2018, with all parties and their counsel present, the court announced that the parties had reached a settlement. The court then asked counsel for the parties to recite the terms of the agreement for the record. Counsel for the Sakhais began: "The parties have agreed upon a complete settlement of all claims between and among them, including all of the cases consolidated before this Court." He further stated that the Sakhais agreed to "pay a total settlement amount to the plaintiffs in the amount of $750,000," including a payment of $400,000 "by a group of insurance carriers that will be described separately by the representative, who is here today." He explained that the $400,000 was payable 15 days from February 5, 2018, "on the condition that on [that date] we have a signed settlement agreement and a complete policy release" signed by the Sakhais. Counsel for the Balakhanes interjected: "Your honor, we have an open-court settlement. We don't need anything in writing. . . . [W]e are in open court. This is under 664.6." Counsel for the Sakhais agreed that "this is fully enforceable under" section 664.6.[4] He then explained the additional terms

---

[4] Section 664.6 (a) provides: "If parties to pending litigation stipulate, in a writing signed by the parties outside the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon

3

that the Sakhais would pay the remaining $350,000 within 60 days after the insurance companies' payment, secured by real property, as well as provisions for liquidated damages and attorney fees triggered by any breach of the agreement.

Counsel for respondents Nationwide and Northfield was also present at the February 2, 2018 hearing. She informed the court that "[i]ncluded as part of the settlement agreement" was the provision that the insurance companies' contribution was contingent upon the Sakhais signing a full policyholders' release releasing respondents "of all obligations under the policies and all possible present and future extra-contractual liabilities in connection with the claims involved in this complaint." The court confirmed with all parties personally that they had heard and agreed to these terms "as relayed by both the attorneys as well as the individual from the insurance company." Counsel for respondents also stated that she accepted the terms on behalf of Nationwide and Northfield. The court accepted the settlement agreement and stated that it "will retain jurisdiction under 664.6 to settle the matter." The minute order from the hearing also states that the settlement was made in accordance with section 664.6.

II.    *Enforcement of Settlement*

On February 7, 2018, the Balakhanes filed an ex parte application to enforce the settlement agreement pursuant to section 664.6, including recovery of liquidated damages and attorney fees and costs. They argued that the parties had agreed to the settlement on the record and that the court retained jurisdiction to enforce the settlement pursuant to section 664.6, but the Sakhais had breached the agreement by failing to execute the insurance policy release.

The Sakhais filed an opposition to the ex parte on February 8, 2018, reiterating in their brief that the parties had entered into an oral settlement on the record. They argued that the Balakhanes' request for ex parte relief was improper and unwarranted, as they were awaiting receipt of a draft

motion, may enter judgment pursuant to the terms of the settlement. If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement."

4

policy release from respondents and the agreement did not require a signed release by a date certain as the Balakhanes claimed. The trial court set a hearing date and indicated it would treat the Balakhanes' ex parte papers as a motion to enforce the settlement agreement.

On February 28, 2018, Nationwide and Northfield filed a joint notice of special appearance, including a memorandum of points and authorities regarding the Balakhane's motion to enforce the settlement agreement. Respondents noted that they had agreed to indemnify the Sakhais in the amount of $400,000 in settlement of the action on the condition that the Sakhais execute a policyholders' release related to the claims at issue. They argued that the court could enforce the agreement under section 664.6, including the requirement that the Sakhais release respondents from liability.

The Sakhais retained new counsel on February 28, 2018. They filed an ex parte application seeking a continuance of the hearing and permission to file a supplemental opposition. In the application, the Sakhais argued that the settlement agreement was unconscionable for several reasons, but did not assert that the settlement was improper because the insurers were not parties or that the court did not have jurisdiction. They did not object to respondents' appearance in their ex parte application or elsewhere. The court denied the ex parte application.

At the March 5, 2018 hearing on the motion to enforce the settlement, counsel for both Nationwide and Northfield appeared, with no objection by the Sakhais. Counsel for the Sakhais argued that the parties contemplated preparing a written settlement agreement following the oral agreement on February 2, but that counsel for the Balakhanes refused to consider it. The court indicated that it was ruling on "step one" regarding the insurance release, and the parties could then discuss "step two" and bring any issues before the court regarding interpreting the settlement agreement. Counsel for Nationwide stated that she wanted to confirm that the policyholders' release was in effect, and the court responded that the release would be in force "when the money is paid."

At the conclusion of the March 5, 2018 hearing, the court adopted its written tentative ruling as the final order. In its ruling, the court found that

5

the settlement was entered on February 2, 2018 "in open court, and pursuant to CCP § 664.6," and included the following terms as relevant here: (1) the Sakhais were "to execute a Full Policy Release relieving their insurance company of liability by noon on February 5, 2018"; (2) the Sakhais were to pay a total settlement amount to the Balakhanes of $750,000, with the first $400,000 to be paid within 15 days of February 5, "on the condition that the insurance release was fully executed by that date"; (3) the remaining $350,000 was to be paid 60 days after the first 15 day deadline; and (4) liquidated damages, attorney fees and costs would be imposed in the event of breach of the agreement. Although the Sakhais had not yet executed the insurance release or issued payment, the court found that the deadline for execution of the insurance release was not absolute and the Sakhais' payment obligations "flow from the date of the execution of the full policy release." As such, the court concluded that the Sakhais had not breached the agreement. However, the court granted the motion in part, to "enforce that part of the agreement granting the carrier a full policy release on the condition that [respondents] forward the agreed upon proceeds forthwith to [the Balakhanes]. Once accomplished, the time will commence by which Defendant Sakhai shall be required to submit his portion of the settlement proceeds."

Nationwide subsequently paid its contribution pursuant to the settlement agreement. Accordingly, on March 14, 2018, the court entered the following order: "Pursuant to the terms of the oral settlement agreement set forth before this Court on February 2, 2018 by and between [the Balakhanes] on the one hand, and [the Sakhais] on the other hand, through their respective counsel, and the agreement having been orally agreed to by the parties, and further, that Nationwide . . . has tendered its agreed upon proceeds to [the Balakhanes] in accordance with the terms of the . . . settlement agreement," the court ordered that "Nationwide . . . is granted a full policy release, releasing Nationwide . . . of all obligations under its policies and all possible present and future extra-contractual liabilities in connection with the claims involved in this complaint." On March 29, 2018, counsel for Nationwide filed notice of entry of the March 14, 2018 order.

6

Northfield paid its portion of the settlement in late March or early April, 2018.[5]  On April 13, 2018, the court set an order to show cause (OSC) regarding dismissal of the case for June 18, 2018.

In June 2018, the Sakhais filed a motion for enforcement of the settlement agreement pursuant to section 664.6.  They also filed an ex parte application to shorten time to hear the motion, giving notice of the application to the Balakhanes and to counsel for the insurers.  The court set the hearing on the Sakhais' motion for August 3, 2018.

In their motion to enforce the settlement, the Sakhais argued that "[the] parties agreed to the terms [of the settlement agreement] on the record in open court . . . and therefore the settlement is enforceable by way of motion pursuant to [section] 664.6."  They claimed that the Balakhanes materially breached the settlement agreement by filing a motion in May 2018 seeking a determination that they were the prevailing parties.  The Sakhais' motion also argued that "[p]ursuant to the terms of the February 2, 2018 settlement agreement made orally before this court, the court agreed to retain jurisdiction over the parties" pursuant to section 664.6.

Also in June, 2018, the Balakhanes filed another ex parte application for a motion to declare the settlement agreement breached and enter judgment against the Sakhais.  They argued that the Sakhais had not paid the $350,000 owed under the settlement agreement.

On August 3, 2018, the court held a hearing on its OSC regarding dismissal, the Sakhais' motion to enforce settlement, and the Balakhanes' motion to declare the agreement breached.  In its written order issued after the hearing, the court noted that it was undisputed that respondent insurers had made their payments under the settlement agreement, but that the Sakhais had not made the remaining payment.  The court rejected the argument that the Balakhanes had breached the settlement agreement, noting that they were "entitled to bring a motion under CCP § 664.6 to enforce the Agreement."  The court ordered the Sakhais to "make the remaining payment of $350,000 forthwith or face the consequences of having the liquidated damages clause go into effect."  The court also stated that any

_____

[5]     The record contains a proposed order granting Northfield a policy release, but there is no indication that it was filed or granted.

party could bring an appropriate motion for attorney fees or other costs incurred in seeking enforcement of the settlement agreement and "once that's decided, the matter will be concluded."  The Sakhais paid the $350,000 the same day.

III.   *Motion for Attorney Fees and First Appeal*

The Balakhanes filed a motion for attorney fees and costs incurred from their motion practice to enforce the settlement agreement on August 16, 2018.  In their opposition, the Sakhais again argued that the court agreed to retain jurisdiction over the parties pursuant to section 664.6 to enforce the settlement agreement, that the Sakhais had paid the full amount owed, and that the Balakhanes had breached the agreement.  The court denied the motion for attorney fees and costs on November 5, 2018.

The Balakhanes appealed from the trial court's denial of their motion for attorney fees and costs. In our prior unpublished opinion, *Balakhane v. Sakhai* (Aug. 27, 2020, No. B294837) (nonpub. opn.), we affirmed the trial court's denial of attorney fees.  We also noted that in their respondents' brief on appeal, the Sakhais argued that the settlement agreement was void for noncompliance with section 664.6.  We refused to consider this claim, as the Sakhais had not raised it below and had not appealed from the judgment.[6]

IV.   *Motion to Vacate*

On February 27, 2020, the Sakhais filed a motion to "vacate void orders of March 5, 2018, March 14, 2018, March 29, 2018 releasing non parties" Nationwide and Northfield.  Citing section 473, subdivision (d) (473(d)), the Sakhais contended they could move at any time to set aside a void judgment or order.  They argued that respondents were not parties to the lawsuit and the court thus had "no jurisdictional basis" to order a release of their liabilities in connection with the claims at issue. They also argued that the court lacked jurisdiction to enter the order granting the policy release because no party had requested that the court retain jurisdiction under section 664.6 to enforce the settlement agreement.

Respondents opposed.  Nationwide argued that the judgment tracked the settlement and was therefore valid under section 664.6, that the court

_____

[6]   The Sakhais filed a notice of appeal, but then defaulted and their appeal was dismissed.

had subject matter jurisdiction over the settlement agreement, including the policy release, and that Nationwide performed under the settlement agreement. Nationwide also argued that the Sakhais could not challenge the merits of a final judgment two years after entry under the guise of section 473(d). Northfield filed a "notice of special appearance to file joinder" in Nationwide's opposition. In addition to joining the opposition, Northfield sought to strike the Sakhais' motion to vacate, claiming that the Sakhais failed to give Northfield timely notice of the motion.

The hearing was held June 26, 2020. Counsel for Nationwide and Northfield made special appearances on behalf of the insurers. In response to a query from the court regarding the basis of the motion, counsel for the Sakhais confirmed that the motion was brought under section 473(d) in an effort to vacate the challenged order as void. He also challenged the court's ability to enforce the settlement agreement because respondents did not personally consent and no party requested that the court retain jurisdiction under section 664.6.

The court denied the Sakhais' motion. The court rejected their argument that the judgment was void, finding that the transcript of the agreement entered on the record on February 2, 2018 established "that the Court's jurisdiction to enforce the settlement agreement was properly preserved." The court noted that counsel for both parties "expressly agreed that this open-court settlement was being brought pursuant to, and was 'fully enforceable' under," section 664.6. The court further cited the personal acknowledgment by the parties on the record on February 2, 2018 that they had heard, understood, and agreed to the terms of the agreement, which included the payments and the insurance policy release, followed by the court's express retention of jurisdiction under section 664.6.

The Sakhais timely appealed from the court's order denying their motion to void prior orders. In their notice of appeal, the Sakhais also stated they were appealing from the court's March 5, 14, and 29, 2018 orders, based on the claim that those orders "stem[med] from void 02/02/18 proceedings involving nonparties."

9

**DISCUSSION**

The Sakhais contend the trial court erred in denying their motion to vacate as void the 2018 orders releasing respondents from liability pursuant to the settlement agreement. We conclude the trial court's orders were not void and therefore the court did not err in denying the Sakhais' request to vacate them.

I.    *Legal Standards*

Under section 473(d), a trial court "'may . . . set aside any void judgment or order.'" "By its plain terms, this provision grants a trial court the discretion to set aside a judgment or order, but only if that judgment or order is 'void.'" (*People v. North River Insurance Co.* (2020) 48 Cal.App.5th 226, 232 (*North River*), citing *Nixon Peabody LLP v. Superior Court* (2014) 230 Cal.App.4th 818, 822.)

A judgment is "void" only when the court entering that judgment "lack[ed] jurisdiction in [a] fundamental sense" due to the "'entire absence of power to hear or determine the case'" resulting from the "'absence of authority over the subject matter or the parties.'" (*People v. American Contractors Indemnity Co.* (2004) 33 Cal.4th 653, 660, quoting *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 287, 288.) As our Supreme Court has explained, "jurisdictional errors can be of two types[:] A court can lack fundamental authority over the subject matter, question presented, or party, making its judgment void, or it can merely act in excess of its jurisdiction or defined power, rendering the judgment voidable." (*In re Marriage of Goddard* (2004) 33 Cal.4th 49, 56.) "Only void judgments and orders may be set aside under section 473, subdivision (d); voidable judgments and orders may not." (*North River, supra*, 48 Cal.App.5th at p 234; see also *Vitatech Internat., Inc. v. Sporn* (2017) 16 Cal.App.5th 796, 807; *Dill v. Berquist Construction Co.* (1994) 24 Cal.App.4th 1426, 1441 ["A trial court has no statutory power under section 473, subdivision (d) to set aside a judgment that is not void."].)

"Voidness is a legal question we review de novo; the discretionary decision whether to set aside a void judgment or order is, as one would anticipate, reviewed solely for an abuse of that discretion." (*North River,*

*supra,* 48 Cal.App.5th at p. 232; see also *Nixon Peabody LLP v. Superior Court, supra,* 230 Cal.App.4th at p. 822.)

II. *Analysis*

The Sakhais argue that the court's orders granting the Nationwide policy release[7] were void because the court lacked subject matter jurisdiction over the settlement and personal jurisdiction over respondents as nonparties. We disagree on both counts.

We find that the trial court had fundamental jurisdiction over the subject matter of the settlement agreement. The Sakhais' challenge focuses on the second part of section 664.6, which provides: "If requested by the parties, the court may retain jurisdiction over the parties to enforce the settlement until performance in full of the terms of the settlement." They contend the court did not properly retain jurisdiction under section 664.6 because the parties did not affirmatively request that it do so during the February 2, 2018 hearing.

As an initial matter, the issue of the court's ability to retain jurisdiction under section 664.6 is properly raised only if the matter has been dismissed pursuant to settlement. In order to maintain subject matter jurisdiction over the action following dismissal, the court must affirmatively retain jurisdiction to enforce the settlement pursuant to section 664.6. (See *Hagan Engineering, Inc. v. Mills* (2003) 115 Cal.App.4th 1004, 1010-1011 [court lacked jurisdiction where parties did not request that the court retain jurisdiction prior to dismissal of the case]; *Wackeen v. Malis* (2002) 97 Cal.App.4th 429, 433 ["requests for retention of jurisdiction must be made prior to a dismissal of the suit"]; *Basinger v. Rogers & Wells* (1990) 220 Cal.App.3d 16, 23 ["[Plaintiffs] could have filed their motion under section 664.6 . . . before their dismissals were filed. Having waited to bring their

---

[7] We note that apart from the March 5, 2018 order enforcing the policy release portion of the agreement, there is no indication in the record before us that the court issued a separate order granting a policy release to Northfield, as it did for Nationwide. Northfield contends that no such order was necessary to effectuate the release, as it was one of the terms of the agreement. In any event, our reasoning regarding the court's jurisdiction would apply to a Northfield policy release as well.

11

motion until after their actions were dismissed, [Plaintiffs] must now contend with the policies favoring finality of judgments and termination of litigation" pursuant to section 473.]; *Viejo Bancorp, Inc. v. Wood* (1989) 217 Cal.App.3d 200, 206 ["Because the old action was no longer pending at the time the court sought to enter the judgment reviewed here, the court was without subject matter jurisdiction."].)

Here, the court had not dismissed the case when it entered the challenged orders regarding the insurance policy release in March 2018. In April 2018, after Nationwide and Northfield made payments required under the settlement agreement, the court issued an OSC regarding dismissal of the action, but continued the hearing to August 2018. At the August 3 hearing, the court did not dismiss the action, but indicated that the matter would be concluded after deciding any motion by the Balakhanes for attorney fees. As such, the court retained original subject matter jurisdiction over the litigation at the time it granted the Nationwide policy release and issued the related orders enforcing the settlement agreement. Therefore, retained jurisdiction under 664.6 is not at issue.

In addition, we agree with respondents that the parties properly requested that the court retain jurisdiction to enforce the settlement pursuant to section 664.6. While reciting the terms of the settlement into the record, counsel for both parties confirmed their intention that the agreement was to be enforced pursuant to section 664.6. The parties then personally agreed on the record that they had heard, understood, and agreed to those terms. The trial court expressly stated it would retain jurisdiction under section 664.6, without objection. The record thus demonstrates compliance with the formal requirements for the retention of jurisdiction under section 664.6. (See *Wackeen v. Malis, supra,* 97 Cal.App.4th at p. 440 ["a request that jurisdiction be retained until the settlement has been fully performed must be made either in a writing signed by the parties themselves, or orally before the court by the parties themselves"].)

We also reject the Sakhais' assertion that the trial court lacked personal jurisdiction over respondents. It is undisputed that respondents were not parties to this litigation. Nevertheless, the record demonstrates that both Northfield and Nationwide submitted to the jurisdiction of the

court.  A court acquires personal jurisdiction over a party that makes a general appearance in an action, even if no summons is served on that party. (§ 410.50, subd. (a).)  "A party may make a general appearance in an action by "'various acts which, under all of the circumstances, are deemed to confer jurisdiction of the person.  [Citation.]  What is determinative is whether [that party] takes a part in the particular action which in some manner recognizes the authority of the court to proceed." [Citation.]'" (*Serrano v. Stefan Merli Plastering Co., Inc.* (2008) 162 Cal.App.4th 1014, 1028–1029 (*Serrano*).)

"A party whose participation in an action is limited to challenging the court's personal jurisdiction does not make a general appearance.  Other forms of participation, however, such as seeking affirmative relief or opposing a motion on the merits, ordinarily constitute a general appearance." (*Serrano, supra,* 162 Cal.App.4th at p. 1029, citing *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52–54; *Alioto Fish Co. v. Alioto* (1994) 27 Cal.App.4th 1669, 1688–1689.)  "Even a nonparty that is not named in the pleadings makes a general appearance and submits to the court's personal jurisdiction by participating in the proceedings in such a manner." (*Serrano, supra*, 162 Cal.App.4th at p. 1029, citing *People v. Ciancio* (2003) 109 Cal.App.4th 175, 192–193.)

Here, respondents did not challenge the trial court's personal jurisdiction over them for the purposes of enforcing the settlement agreement.  In fact, they agreed through their counsel to the terms of the settlement, including the court's retention of jurisdiction under section 664.6 to enforce those terms, and then complied by making the promised payments.  Further, although they claimed to be specially appearing, they filed briefs on the merits regarding the Balakhanes' motion to enforce the settlement agreement.  Respondents also requested affirmative relief when they asked the court to enforce the settlement agreement, including an order effectuating the policy release as provided in the settlement.  Through these acts, we conclude that respondents made a general appearance in the action and were therefore subject to the court's personal jurisdiction for the purpose of enforcing the settlement agreement.

The Sakhais contend that respondents were not subject to the court's jurisdiction because they only specially appeared in response to the ex parte

13

application filed in February 2018 by the Balakhanes seeking to enforce the settlement. They argue that an ex parte appearance is insufficient to establish personal jurisdiction. The record does not support the assertion that respondents appeared specially or only in connection with ex parte proceedings. Although the Balakhanes initially sought to enforce the settlement through an ex parte application, the court deemed the application a motion after the Sakhais objected that ex parte relief was improper. Moreover, respondents appeared before the trial court on February 2, 2018 and agreed through counsel to be bound by the settlement agreement, they filed supporting papers to the Balakhanes' ex parte application (deemed by the trial court as moving papers) to enforce the settlement, and they appeared at the March 5, 2018 hearing on that motion, all without any objection by the Sakhais. (See, e.g., *Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 122, fn.4 (*Tokio*) [Noting that "[a]ppearing only specially to contest jurisdiction . . . precludes opposition on the merits"].) Each time, respondents asserted that the court could enforce the settlement agreement. It is also undisputed that respondents made all payments under the agreement. As such, the record clearly demonstrates that they were willing participants to the settlement agreement and to the court's jurisdiction to enforce it.

The Sakhais' reliance on *Tokio, supra,* 75 Cal.App.4th 110 is inapposite. There, the parties to the litigation (a general contractor and a roofing contractor) and their respective insurers entered into a stipulated judgment. The stipulation did not provide that the general contractor's insurer, a non-party to the litigation, had submitted to jurisdiction, would be added as a party, or agreed to be named as a judgment debtor. (*Id*. at p. 114.) After the roofing contractor received a favorable judgment at trial against the general contractor, it filed a motion to "correct" the judgment to add the general contractor's insurer as an additional judgment debtor. The trial court granted the motion. (*Id*. at p. 115.) The Court of Appeal reversed, finding there was no basis to add the insurer as a judgment debtor on the grounds of "clerical error" under section 473(d). (*Id*. at pp. 117-118.) The court noted that the stipulated agreement "contains neither an express submission to jurisdiction by the [insurer], . . . nor an express agreement to be named as

14

judgment debtor[ ] in the action between the general contractor and the roofing contractor." (*Id*. at p.119.) The court also summarily rejected the roofing contractor's argument that the trial court properly added the insurer as a judgment debtor pursuant to section 664.6, stating that the insurer was "not [a party] to the litigation; section 664.6 therefore does not apply." (*Ibid*.; see also *Fazzi v. Peters* (1968) 68 Cal.2d 590, 591-592, 594 [judgment void where the plaintiff sued a partnership but not the individual partners, but then obtained a default judgment against the individuals].)

In contrast, here, the insurers repeatedly indicated their agreement to submit to the trial court's jurisdiction. The parties agreed on the record to the terms of the settlement, including that the insurers' payments were conditioned on a full policy release by the Sakhais. Once the insurers submitted the payment, the court was well within its authority to enforce the terms of the settlement and grant the policy release. The Sakhais have cited no case that precludes the court's ability to enforce a settlement agreement under these circumstances.

The Sakhais also contend that the settlement did not comply with section 664.6 because respondents did not personally consent to the agreement and the trial court altered the terms of the agreement by issuing the policy release. These challenges to the settlement agreement are untimely and forfeited. They do not render the judgment void, and the Sakhais failed to raise a challenge to any purported voidable jurisdictional errors either before the trial court or within the time to appeal from those orders in 2018. Indeed, the Sakhais sought to enforce the settlement agreement and did not raise any objection to respondents' appearances or the court's authority under section 664.6 until they filed their respondents' brief in the prior appeal and their motion to vacate in the trial court (long after the settlement funds had all been paid). Under these circumstances, the Sakhais forfeited any belated challenge to the trial court's jurisdiction to enforce the settlement agreement. (See, e.g., *People v. Tindall* (2000) 24 Cal.4th 767, 776, fn. 6. ["a court's act in excess of its jurisdiction is valid until set aside, and a party may be precluded from setting it aside, due to waiver, estoppel or the passage of time."]; *Avalos v. Perez* (2011) 196 Cal.App.4th 773, 776 ["As a general rule, a claim of error will be deemed to have been forfeited when a

party fails to bring the error to the trial court's attention by timely motion or objection."].)[8]

## DISPOSITION

The order denying the Sakhais' motion to vacate the court's March 5, 14, and 29, 2018 orders is affirmed. Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


COLLINS, J.


We concur:


MANELLA, P. J.


CURREY, J.

---

[8] At oral argument, counsel for the Sakhais claimed for the first time that respondents were barred from relief pursuant to section 583.210. "We do not consider arguments that are raised for the first time at oral argument." (*Haight Ashbury Free Clinics, Inc. v. Happening House Ventures* (2010) 184 Cal.App.4th 1539, 1554, fn. 9; see also, e.g., *Palp, Inc. v. Williamsburg National Ins. Co.* (2011) 200 Cal.App.4th 282, 291, fn. 2.)