Filed 8/14/23  McPherson v. Southard CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| BONITA M. MCPHERSON,<br><br>    Plaintiff and Appellant,<br><br>        v.<br><br>DONALD L. SOUTHARD et al.,<br><br>    Defendants and Respondents. | G060577<br><br>(Super. Ct. No. 30-2018-00964601)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Fred W. Slaughter, Judge.  Reversed and remanded with directions.  Motion to augment record granted.

Martorell Law, Eduardo Martorell and JoAnn Victor for Plaintiff and Appellant.

Ulwelling Law, James K. Ulwelling and Lauren E. Saint for Defendants and Respondents.

\* \* \*

This is a shareholder derivative action for breach of fiduciary duty, corporate waste, and related claims. Among other allegations, the derivative plaintiff alleges three of the corporation's officers, directors, and controlling shareholders usurped a corporate opportunity by personally purchasing the real property where the corporation's facilities are located, without offering the corporation an opportunity to exercise a previously negotiated option to purchase that property for itself.

Following a two-week bench trial conducted just prior to the start of the COVID-19 pandemic, the trial judge issued a minute order finding in favor of the derivative plaintiff. Two of the defendants requested a statement of decision, but the trial judge retired before addressing the request.

Several months later, after consulting with the first judge, a second judge determined the intended minute order by the trial judge was meant to serve as the statement of decision, and entered a judgment prepared by plaintiff. Among other things, the judgment amended the complaint to conform to proof by adding as defendants a family trust and a limited liability company formed by two of the named defendants. The judgment required the newly added defendants to either sell the property or turn it over to the corporation. The judgment also vacated a deed of trust defense counsel had placed on the property to secure the payment of their attorney fees.

The two newly named defendants filed a motion for new trial, asserting the judgment was against the law and involved an error in law. (See Code Civ. Proc.,[1] § 657(6) & (7).) A third judge heard and granted that motion, finding the judgment implicated the rights of third parties who were not parties at the trial in violation of due

_____

[1] All further statutory references are to this code.

2

process principles, and the court's statement of decision did not adequately provide the legal and factual bases for its decision or sufficiently address all the principal controverted issues at trial.

We reverse the new trial order. Although we agree the judgment violates the due process rights of the new defendants, we conclude the appropriate means of addressing this error is to delete the offending provisions from the judgment, rather than to require the original parties who are involved in this appeal (none of whom were aggrieved by the due process violation) to retry the case from the beginning. We further conclude that the statement of decision, though brief, sufficiently explains the court's decision and addresses the principal controverted issues at trial. We therefore reverse the order granting a new trial and remand this matter to the trial court with directions to modify the judgment.

## FACTS

Western Tap Manufacturing Company, Inc. (Western Tap) manufactures special tapping for the aerospace industry. In 1979, plaintiff Bonita M. McPherson (Bonita[2]) and her husband purchased all 800 shares of Western Tap's stock. Over the next few years, they transferred 200 shares to defendant Donald L. Southard (Don), a long-time employee of Western Tap, to incentivize him to stay with the company. They also transferred 80 shares to their son, defendant Robert McPherson.

In 1997, Bonita's husband, who at the time was chairman of the board of Western Tap, passed away, and their son Robert became chief executive officer and president. Bonita, who was ill at the time, decided to gift 260 shares of her stock to Robert and to sell her remaining 260 shares to Western Tap.

---

[2] Because several of the parties share the same surnames, we refer to them by their first names to avoid confusion. We mean no disrespect.

3

In 1998, Western Tap apparently agreed to purchase those 260 shares by paying Bonita $1,000 per week, either for the rest of her life or for 15 years. Although the record contains no promissory note or signed written agreement confirming Western Tap's purchase of those shares from Bonita, Western Tap's tax returns since 1998 reflect that Western Tap held 260 shares as treasury stock (i.e., stock Western Tap repurchased from a shareholder).

From 1999 to 2001, Western Tap paid Bonita roughly $1,000 per week, or about $52,000 annually. From 2002 onward, however, Bonita received no more than $28,447 annually. Her son Robert told her at some point that Western Tap could no longer afford to pay her $52,000 per year.

In 2004, Western Tap entered into a lease for a property located at 6440-6450 Dale Street in Buena Park (the Dale Street property). The lease, which Robert signed on Western Tap's behalf, included an option to purchase the property for $900,000 when the lease term ended in December 2015.

In 2012, Robert was imprisoned for a felony conviction unrelated to Western Tap's business; he resigned as chief executive officer and president of Western Tap. Don became its president and chief executive officer. At some point, Don's wife, defendant Lynn Southard (Lynn), also joined the board of directors.

In February 2013, the board of directors held a special meeting to discuss, among other topics, what to do with the business in light of Robert's imprisonment, who owned Western Tap stock, and in what percent. According to the minutes from that meeting, the board's "understanding" was that since Western Tap had not paid Bonita $348,000 for the shares she sold to Western Tap in 1998, those 260 shares "revert back to Bonita." The minutes also noted Western Tap would hire an attorney for "advice on how to straighten out this situation." However, no attorney was ever hired.

After the 2013 board meeting, Bonita voted as a Western Tap shareholder without objection.[3] However, Western Tap continued to make periodic payments to Bonita throughout 2013, 2014, and 2015, and Western Tap's tax returns continued to categorize the 260 shares as treasury stock.

In August 2015, with the end of the lease for the Dale Street property drawing near, Robert wrote a letter from prison "'grant[ing] to [Don] my option to purchase the [Dale Street property]'" and "'grant[ing] all proxy and authority to purchase said property for Western Tap.'" Two months later, Robert executed assignment escrow instructions purporting to assign the right to purchase the Dale Street property to Don and Lynn's family trust—the Don and Lynn Southard Trust dated April 19, 2007 (the Southard Trust).

The Southard Trust obtained financing to purchase the Dale Street property. During that process, the property was appraised at $1,890,000—more than twice the value of Western Tap's $900,000 purchase option; Don did not inform Bonita or anyone else from the McPherson family about the appraisal.[4]

The Southard Trust purchased the Dale Street property for $900,000; escrow closed in December 2015. That same month, the Southard Trust executed a 21-year lease with Western Tap for the Dale Street property without consulting Bonita or the Western Tap board. Don and Lynn signed the lease on behalf of both the lessor (the Southard Trust) and the lessee (Western Tap).

Shortly thereafter, Don and Lynn formed Donald and Lynn Southard, LLC (the Southard LLC), acting upon an attorney's advice to "protect [the property] in a[n]

---

[3]     The other shareholders reportedly did not want to "make waves."

[4]     Don told Bonita he was going to exercise the option to purchase the building; she did not object or call a board meeting to discuss the purchase.

LLC." The Southard Trust quitclaimed the Dale Street property to the Southard LLC in 2016. The Southard LLC charged and collected rent from Western Tap.

In May 2016, Don and Lynn informed Bonita via e-mail that they were "going to have to sell Western Tap."[5] Two months later, Bonita filed a complaint in federal court against Western Tap, Don, and Lynn, alleging they had breached the 1998 contract to purchase her shares. That case was eventually remanded to Orange County Superior Court.

In January 2018, Bonita initiated the present action by filing a verified shareholder derivative complaint against Don, Lynn, and Robert, asserting claims on Western Tap's behalf for breach of fiduciary duty by corporate officers and controlling shareholders, unfair business practices, unjust enrichment, abuse of control, corporate waste, and for an accounting. Two months later, Don and Lynn resigned as employees and board members of Western Tap, believing Western Tap had become a "hostile workplace."

In 2019, Bonita filed a motion for leave to file a first amended complaint adding the Southard LLC and the Southard Trust as defendants and adding claims for quiet title and set aside. The trial court denied her motion without prejudice, in part because Bonita had been "dilatory" in bringing the motion. Bonita did not renew her motion.[6]

---

[5]     Don and Lynn both testified that this was a poor choice of words and they did not intend to shut down the company.

[6]     A few months later, Bonita brought another motion for leave to file a first amended complaint which would have consolidated her federal court claims with the present action. That motion did not seek to add the Southard LLC or the Southard Trust as defendants. The trial court denied that motion as well, finding Bonita had failed to demonstrate diligence in moving for leave to amend.

6

Around that same time, Ulwelling Law, APC (Ulwelling Law), counsel for Don and Lynn in this litigation, placed a lien on the Dale Street property by way of a deed of trust and assignment of rent. This was done to secure Don and Lynn's payment of their attorney fees.

Trial began in February 2020 before the Honorable Sheila Fell. During the two-week bench trial, three of the main issues were (1) whether Bonita was a shareholder who had standing to sue derivatively on Western Tap's behalf; (2) whether Don, Lynn, and Robert misappropriated company funds to cover their personal expenses; and (3) whether Don and Lynn usurped a corporate opportunity by purchasing the Dale Street property. At no point during trial did Bonita move to amend her complaint to conform to proof by adding the Southard Trust, the Southard LLC, or Ulwelling Law as parties.[7]

Judge Fell took the matter under submission, and in July 2020, she issued a two-page minute order in favor of Bonita on behalf of Western Tap. Judge Fell found Bonita did have standing to bring the lawsuit; Western Tap funds were used to cover the personal expenses of Don, Lynn, and Rob; and Don and Lynn usurped a corporate opportunity by exercising the option to purchase the Dale Street property. She therefore ordered Don, Lynn, and Robert to reimburse Western Tap for all unauthorized distributions and payments of personal expenses.

As for the Dale Street property, Judge Fell found that Western Tap "shall have the right to ownership of the Dale Street property subject to repayment of expenses actually incurred by Don and Lynn Southard pursuant to the acquisition of the property. Alternatively, the property may be sold with the net proceeds being distributed first: to Don and Lynn Southard to reimburse them for the provable Dale Street acquisition costs,

---

[7] At the end of trial, Bonita's counsel commented in passing, "[I]f Your Honor thinks anything is missing from our complaint, there is the opportunity to amend the complaint. That's Code of Civil Procedure 469, 'to conform to proof.' [¶] . . . No one is going to be prejudiced."

and next:  to unpaid obligations of the corporation (such as the weekly $1,000 obligation to Bonita McPherson, and other unpaid obligations).  Any remaining balance from said sale in addition to the funds received from Defendants' reimbursement amount is to be distributed to shareholders pro rata to the shares owned."

Don and Lynn filed a 15-page request for a statement of decision under section 632, identifying 34 controverted issues, which they then splintered into more than 160 subissues.  In response, Bonita asserted the court's July 2020 ruling adequately addressed all the principal controverted issues at trial.  On page 26 of her response, Bonita also asked the court to amend the pleadings to conform to proof by adding the Southard LLC and the Southard Trust as defendants.

Judge Fell retired before responding to Don and Lynn's request for a statement of decision.  After her retirement, the Honorable Frederick P. Horn (Ret.) presided over several posttrial hearings, including the hearing on Don and Lynn's request for a statement of decision.  In January 2021, Judge Horn issued a minute order on their request, noting he had consulted at length with Judge Fell, reviewed all minute orders from the trial, considered Don and Lynn's request and Bonita's response, and concluded the July 2020 minute order was in fact the statement of decision for the matter.

Bonita submitted a proposed judgment, which Judge Horn entered in March 2021.  Among other things, the judgment amended the operative complaint to conform to proof by adding the Southard Trust and the Southard LLC as defendants.  The judgment then required Don, Lynn, the Southard Trust, and the Southard LLC (which the judgment collectively referred to as "the 'Defendants Southards'") to either turn over the Dale Street property to Western Tap, subject to the repayment of the expenses Don and Lynn incurred in acquiring the property, or submit a joint plan to sell the Dale Street property with net proceeds covering Don and Lynn's expenses in acquiring the property and Bonita's attorney fees and costs; any remaining funds were to be distributed to the shareholders on a pro rata basis.  The judgment also voided and nullified the Southard

8

LLC's 2016 quitclaim deed and Ulwelling Law's 2019 deed of trust on the Dale Street property.

Don and Lynn moved for a new trial under section 657 based on irregularity in the proceedings (§ 657(1)), excessive damages (§ 657(5)), the decision being against the law (§ 657(6)), and error in law (§ 657(7)). Among other arguments, they asserted the judgment differed substantially from Judge Fell's decision, and granted relief not contemplated in Judge Fell's July 2020 decision because it added new parties— the Southard LLC and the Southard Trust—as defendants. Bonita opposed the motion, asserting the judgment's inclusion of the Southard LLC and the Southard Trust and its voiding of defense counsel's deed of trust on the Dale Street property were consistent with Judge Fell's ruling.

The new trial motion was heard by a third judge, the Honorable Fred W. Slaughter. After taking the matter under submission, Judge Slaughter granted the motion: "Based on a review of the record, the court concludes [Don and Lynn] show an error in law, as the judgment implicates the rights of third parties that were not parties at the trial. The only named defendants in this case through the end of trial were the Southards. The record demonstrates that it is undisputed that the Dale Street Property was purchased in 2015 by trustees of [the Southard Trust], and later transferred by quitclaim deed to [the Southard LLC]. The court also notes there are three deeds of trust recorded on the Property, including one recorded in 2019 by defense counsel Ulwelling Law, APC, to secure the Southards' obligation to pay legal fees. [Citation.] [¶] This court's March 30, 2021, Judgment . . . voids the Quitclaim Deed between the [Southard] Trust and the [Southard] LLC as well as the October 23, 2019, Deed of Trust recorded by Ulwelling Law. [Citation.] The judgment also orders the parties to either: (a) turn over the Dale Street Property to Western Tap, subject to repayment of expenses the Southard Defendants incurred in acquiring the property, or (b) submit a joint plan to sell the Property."

Judge Slaughter continued: "Both the California and U.S. Constitutions provide that no state shall deprive any person of property without due process of law. (U.S. Const., 14th Amdt.; Cal. Const., Art. 1, §§7, 15.) Here, the record demonstrates that the court adjudicated the property rights of the [Southard] Trust, the [Southard] LLC, and the Ulwelling Law without providing each party notice and an opportunity for hearing. While the judgment purports to amend the operative complaint to add the [Southard] Trust and the [Southard] LLC, the court notes the record includes no evidence of a motion by Plaintiff to amend to conform to proof, or any ruling thereon by Judge Fell. [¶] Even if the court assumed Plaintiff made a motion at trial to add these defendants, the court concludes the addition of these defendants constitutes an error in law. . . . [¶] . . . [¶] [The Southard] LLC and the [Southard] Trust were added to the case at judgment, with no opportunity to protect their property rights. The court observes that Ulwelling Law was never added as a defendant, despite its purported interest in the Dale Street Property."

In granting Don and Lynn's new trial motion, Judge Slaughter also found the statement of decision did not adequately explain the legal and factual bases for the court's decision, or sufficiently address several controverted issues identified in Don and Lynn's request for statement of decision, "including: (1) the date of breach of Western Tap's breach, the date [Bonita's] shares of stock reverted to her, and whether Western Tap's obligation to make weekly payments continued after that reversion; (2) the statute of limitations on [Bonita's] claims based on the Southards' and Robert McPherson's unauthorized use of corporate funds for personal expenses; (3) the factual bases of the court's finding that the option to purchase the Dale Street Property was a corporate opportunity; and (4) whether [Bonita] had actual knowledge of the option and/or transaction prior to the December 2015 transaction." The court also "reiterate[d] that Judge Fell is retired, and is no longer available to issue a statement of decision on this case." Accordingly, Judge Slaughter ordered a new trial and set a status conference.

10

Bonita filed a motion for leave to file a first amended complaint to add the Southard LLC, the Southard Trust, and Ulwelling Law. Judge Slaughter denied the motion, explaining in a seven-page minute order that Bonita had not adequately explained or justified her delay in seeking to add those third parties, despite having known about their involvement years earlier.

Bonita filed a notice of appeal from Judge Slaughter's order granting a new trial. Don and Lynn in turn filed a protective cross-appeal from the judgment. (See companion case, *McPherson v. Southard et al.* (Aug. 14, 2023, G060614 [nonpub. opn.].)

## DISCUSSION

A trial court's authority to grant a new trial is established and circumscribed by statute. (*Oakland Raiders v. National Football League* (2007) 41 Cal.4th 624, 633.) Specifically, section 657 allows a court to vacate a decision and order a new trial "on the application of the party aggrieved" if that party's "substantial rights" are materially affected by one or more of seven enumerated causes, including: "6. . . . the verdict or other decision is against law" or "7. [e]rror in law, occurring at the trial and excepted to by the party making the application." (§ 657.) "When a new trial is granted, on all or part of the issues, the court shall specify the ground or grounds upon which it is granted and the court's reason or reasons for granting the new trial upon each ground stated." (*Ibid.*) "On appeal from an order granting a new trial the order shall be affirmed if it should have been granted upon any ground stated in the motion, whether or not specified in the order or specification of reasons." (*Ibid.*)

The parties disagree on the applicable standard of review. As Bonita argues, orders granting a new trial are generally examined for abuse of discretion. (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 859 (*Aguilar*); see *Lane v. Hughes Aircraft Co*. (2000) 22 Cal.4th 405, 412 ["an order granting a new trial under section 657 'must be sustained on appeal unless the opposing party demonstrates that no

11

reasonable finder of fact could have found for the movant on [the trial court's] theory'"]; see also *Johnson & Johnson Talcum Powder Cases* (2019) 37 Cal.App.5th 292, 336-337 [order granting new trial "'will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears'"].) As Don and Lynn note, however, where the trial court's order granting a new trial is predicated on its determination that there was an error in law, we review its ruling de novo. (*Aguilar,* pp. 859-860.) We need not resolve which standard of review applies here, because under either standard, the order granting new trial must be reversed.

The trial court correctly determined the judgment affected the real property rights of several nonparties—the Southard Trust, the Southard LLC, and Ulwelling Law—and therefore violated those parties' right to due process. California has long recognized that "'a judgment may not be entered either for or against one who is not a party to an action or proceeding. [Citations.]' [Citation.] 'Rendering a judgment for or against a nonparty to a lawsuit may constitute denial of due process under the United States and California Constitutions. [Citations.] Due process is denied because the nonjoined party has not been given notice of the proceedings or an opportunity to be heard. [Citation.] Notice and a chance to be heard are essential components to the trial court's jurisdiction and for due process.'" (*Tokio Marine & Fire Ins. Corp. v. Western Pacific Roofing Corp.* (1999) 75 Cal.App.4th 110, 121 (*Tokio Marine*); see *Ansley v. Superior Court* (1986) 185 Cal.App.3d 477, 483 [absence of due process notice is a jurisdictional defect that renders the judgment void].)[8]

---

[8]     "'Without jurisdiction over the parties, an in personam judgment is invalid.'" (*Tokio Marine, supra*, 75 Cal.App.4th at p. 121.) A court obtains personal jurisdiction over a party if the party is served with the summons or if the party consents to jurisdiction by making a general appearance, seeking affirmative relief, or opposing a motion on the merits. (§ 410.50, subd. (a); *Dial 800 v. Fesbinder* (2004) 118 Cal.App.4th 32, 52 [general appearance operates as consent to personal jurisdiction and dispenses with service requirement]; *Canaan Taiwanese Christian Church v. All World Mission Ministries* (2012) 211 Cal.App.4th 1115, 1126 ["nonparty that is not named in the

"'The federal and state Constitutions generally require that individuals be accorded procedural due process before being deprived of a protected property interest. [Citations.] This requirement ensures fair play, protects an individual's use and possession of property from arbitrary encroachment and minimizes unfair or mistaken deprivations of property. [Citation.] Whenever property is taken, due process requires some form of notice and a hearing . . . .'" (*In re FairWageLaw* (2009) 176 Cal.App.4th 279, 286; cf. *Roth v. Jelley* (2020) 45 Cal.App.5th 655, 672 [party with contingent future remainder interest in a trust had a due process right to notice and hearing before probate court could issue decree adversely affecting his property interests]; *In re Marriage of Ramirez* (2011) 198 Cal.App.4th 336, 345 [just as lienholders are indispensable parties to foreclosure actions, family law attorney with real property lien on community real property is an indispensable party in any proceeding affecting his or her rights to property].)

In this case, the entities that were added to the judgment or whose property interests in the Dale Street property were adversely affected by the judgment—the Southard Trust, the Southard LLC, and Ulwelling Law—were not named as parties in the complaint, were not served with a summons, and were not joined in the proceedings. They did not consent to jurisdiction by making a general appearance, by seeking affirmative relief, or by opposing a motion. They were not afforded an opportunity to

pleadings makes a general appearance and submits to the court's personal jurisdiction by seeking affirmative relief or opposing a motion on the merits"]; see also *Rockefeller Technology Investments (Asia) VII v. Changzhou SinoType Technology Co., Ltd*. (2020) 9 Cal.5th 125, 139 [service of process protects a defendant's due process right to defend against an action by providing constitutionally adequate notice of the court proceeding].)

13

conduct discovery, assemble evidence, or defend their property rights at trial. And Bonita never brought a motion during trial to add them as defendants.[9]

The judgment nonetheless purportedly added the Southard Trust and the Southard LLC as defendants, voided the Southard Trust's quitclaim deed on the Dale Street property to the Southard LLC, forced the Southard LLC to turn over the property to Western Tap, and voided Ulwelling Law's deed of trust in the property. "This was a rather straightforward denial of due process." (*Tokio Marine, supra,* 75 Cal.App.4th at p. 121 [reversing order adding nonparty insurer as judgment debtor].)

Bonita insists there was no due process violation because Don and Lynn, who are the trustees of the Southard Trust and the principals of the Southard LLC, and their defense counsel, James K. Ulwelling, were all present at trial and had "every incentive" to protect the property interests of the Southard Trust, the Southard LLC, and Ulwelling Law. While that could be true, we cannot know for certain. As best we can tell, the record is silent as to who the Southard Trust's beneficiaries are, whether the Southard LLC has other members besides Don and Lynn, or whether any of these nonparties had insurance policies which would have provided a defense to any claims against them. Without such information, we cannot determine whether the interests of the Southard Trust, the Southard LLC, or Ulwelling Law were adequately represented during discovery or at trial. (Cf. *St. Sava Mission Corp. v. Serbian Eastern Orthodox Diocese* (1990) 223 Cal.App.3d 1354, 1376 [applying Illinois law and noting that "[i]f a nonparty is to be bound by a judgment, upon the theory the nonparty's concurrently held interests were represented by a party, at a minimum it must be shown that the interest of the nonparty received adequate representation by the party"].)

---

[9]     Although Bonita mentioned in passing a possible amendment to conform to proof on page 26 of her response to Don and Lynn's request for a statement of decision, that was after the case was submitted.

14

Bonita asks us to disregard these procedural failings because the judgment amended the complaint to conform to proof to add those nonparties as defendants. We are not persuaded. Although generally speaking, California courts liberally allow amendments to conform to proof (*General Credit Corp. v. Pichel* (1975) 44 Cal.App.3d 844, 849), allowing such an amendment during or after trial is an abuse of discretion if it prejudices the opposing party. (See, e.g., *McMillin v. Eare* (2021) 70 Cal.App.5th 893, 913-914 [trial court's sua sponte posttrial amendment to add cause of action was abuse of discretion because it "contravened basic tenets of law and motion practice" and violated party's due process right to notice]; *Duchrow v. Forrest* (2013) 215 Cal.App.4th 1359, 1380 [granting midtrial motion to amend complaint to conform to proof was abuse of discretion because motion was made unreasonably late and without excuse for delay]; *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 912-913 [granting midtrial motion to amend complaint to conform to proof was prejudicial to opposing party where theory had not been pursued in discovery].)

Moreover, an amendment to conform to proof to add a nonparty *as a defendant* is rarely appropriate because the nonparty would almost certainly be prejudiced by such an amendment. Indeed, "California courts have denied leave to amend where the proposed amendment to the complaint is during or after trial, and the amendment would require the defendant to have litigated or acted differently to assert his rights before and at trial." (*Mac v. Minassian* (2022) 76 Cal.App.5th 510, 519 (*Mac*).) The parties do not point to any case where a defendant was pled into a case posttrial without prejudice, and we could find none. (See *id.* at p. 520 [reaching same conclusion].)[10]

_____

[10] As the *Mac* court noted, "Possibly analogous circumstances are cases concerning motions to amend judgments to add a defendant who is the alter ego of another defendant against whom the plaintiff obtained a judgment, which are filed pursuant to Code of Civil Procedure section 187. [Citation.] Yet, the 'ability under section 187 to amend a judgment to add a defendant, thereby imposing liability on the

15

For all these reasons, Judge Slaughter was correct in determining Judge Horn should not have added the Southard Trust and the Southard LLC as defendants after trial, and that Judge Horn should not have included provisions in the judgment voiding the Southard Trust's quitclaim deed on the Dale Street property, forcing the Southard LLC to turn over the property to Western Tap, or voiding Ulwelling Law's deed of trust in the property.[11]

That is not to say, however, that the entire judgment must be vacated, or that the matter should be retried from scratch. The due process violations discussed above affected only three entities—none of which moved for new trial, and none of which is a party to this appeal. The parties who moved for a new trial, Don and Lynn, were not individually aggrieved by the due process violations. Accordingly, they lacked the ability to raise that due process violation as a basis for their motion for new trial.

---

new defendant without trial, requires *both* (1) that the new party be the alter ego of the old party *and* (2) that the new party had controlled the litigation, thereby having had the opportunity to litigate, in order to satisfy due process concerns.'" (*Mac, supra,* 76 Cal.App.5th at p. 520.) Here, as best we can tell, Bonita did not bring a motion under section 187 or make any alter ego argument to the trial court, nor does she argue on appeal that the unnamed parties were Don and Lynn's alter egos. Indeed, doing so would have been seemingly inconsistent with Bonita's theory of the case, because "amending a judgment to add an alter ego does not add a new defendant but instead inserts the correct name of the real defendant." (*Misik v. D'Arco* (2011) 197 Cal.App.4th 1065, 1072.)

[11]     Bonita also contends Judge Slaughter lacked the power to correct or change Judge Fell's July 2020 minute order or Judge Horn's March 2021 judgment, asserting that "the power of one judge to vacate an order made by another judge is limited." (*In re Alberto* (2002) 102 Cal.App.4th 421, 427.) While that may be true, the rule is inapplicable here. Although a new trial motion generally must "be heard and determined by the judge who presided at the trial," if the judge who presided at trial is unable to hear the motion, the motion instead "shall be heard and determined by any other judge of the same court." (§ 661; see also *Sandco American, Inc. v. Notrica* (1990) 216 Cal.App.3d 1495, 1508–1509 [trial judge may grant new trial based on irregularity in orders of another judge].) That is what occurred here. Judge Slaughter therefore did not act in excess of his powers in hearing the new trial motion.

16

(See § 657 [new trial may be granted "on the application of the party aggrieved" if the error "materially affect[s] the substantial rights of such party"].)

The proper remedy is to delete paragraph 1 (granting Bonita's request to add the Southard Trust and the Southard LLC as defendants), the second sentence and subdivisions (a) and (b) of paragraph 13 (requiring "Defendants Southard" to turn over or sell the Dale Street property), paragraph 14 (requiring the appointment of a receiver to address the disposition of the Dale Street property), and paragraph 15 (voiding and nullifying the Southard LLC's quitclaim deed and Ulwelling Law's deed of trust) from the judgment in their entirety. (See § 43 [Court of Appeal may modify any judgment or order appealed from and direct proper judgment or order to be entered]; *In re J.R.* (2022) 82 Cal.App.5th 569, 582 [noting that Courts of Appeal are given "'broad powers'" in the disposition of appeals].) [12]

But our analysis of the new trial order does not end there. Judge Slaughter also granted Don and Lynn's new trial motion because he found the statement of decision did not adequately provide the legal and factual bases for the court's decision or sufficiently address several principal controverted issues as identified in Don and Lynn's request for statement of decision.

We disagree. A statement of decision need only "explain[ ] the factual and legal basis for its decision as to each of the principal controverted issues at trial . . . ." (§ 632.) Judge Fell's July 2020 minute order (which Judge Horn later determined was in fact the statement of decision after consulting at length with Judge Fell), though brief, complied with that minimum requirement: it addressed (1) whether Bonita was in fact a shareholder and had standing to sue derivatively on Western Tap's behalf, (2) whether

---

[12] We recognize these deletions eliminate any relief to Bonita for Don and Lynn's usurpation of the corporate opportunity (see the first sentence of paragraph 13). However, we decline to determine what relief, if any, might be appropriate for that. That job is best left to the trial court in the first instance.

17

Don, Lynn, and Robert misappropriated company funds to cover their personal expenses, and (3) whether Don and Lynn usurped a corporate opportunity by purchasing the Dale Street property.

Don and Lynn's request for a statement of decision identified 34 controverted issues and more than 160 subissues they asked the trial court to address. However, their specification of the "principal controverted issues" at trial is not controlling. "[A] trial court is not required to respond point by point to issues posed in a request for a statement of decision." (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 500.) The court was therefore under no obligation to issue a second statement of decision responding to the over 160 subissues identified by Don and Lynn. (See *ibid.* [trial court was not required to respond point by point to every issue raised by plaintiff]; *In re Marriage of Balcof* (2006) 141 Cal.App.4th 1509, 1530 [trial court was not required to provide a statement of decision addressing wife's 37 questions or their subparts]; *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380 [trial court was not required to respond point by point to 36 issues posed by plaintiff].)

## DISPOSITION

The order granting new trial is reversed. On remand, the trial court is directed to enter an amended judgment in favor of Bonita and against Don, Lynn, and Robert that deletes paragraph 1, the second sentence and subdivisions (a) and (b) of paragraph 13, and paragraphs 14 and 15 in their entirety, and that defines the term "Defendants Southards" to refer only to Don and Lynn, not to the Southard Trust or the Southard LLC. In light of these deletions, the court may also, in its discretion, award any relief it deems appropriate for Don and Lynn's usurpation of the corporate opportunity (see the first sentence of paragraph 13) or for any other claim, and it may request

18

supplemental briefing from the parties before doing so.  In the interests of justice, each side shall bear his or her own costs on appeal.  (Cal. Rules of Court, rule 8.278(5).)


                                        GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


BEDSWORTH, J.